MARGARETTA CRABB, Appellant and Respondent, *v.* ISAAC H. YOUNG et al., Executors, etc., Appellants and Respondents.

In an action brought by one of the beneficiaries under a will against the executors, who by the will were authorized to sell the real estate, and to invest and hold the proceeds with that of the personalty, as trustees for certain specified trusts, to recover damages for alleged willful delay and neglect in selling the real estate, and for improvident investments of the trust funds and to remove the trustees, it appeared that a former action was brought by plaintiff against defendants and others, wherein the complaint charged willful and fraudulent misconduct in the management of the estate and delay in selling the real estate, and demanded judgment that the executors be directed to sell immediately, also, to pay plaintiff the sums lost by such negligence, and that some other person be appointed to take charge of the portion of the funds in which plaintiff was interested. By the judgment in that action the trustees were directed to sell the real estate at auction within five months, and one of the trustees was suspended until the further order of the court on the ground of his insolvency. It also appeared and the court found that plaintiff upon being paid a consideration by the other *cestuis que trust*, who were satisfied with defendants' management, consented to a delay in the sale ; that certain securities were set aside as and for her portion of the trust fund, and that the lands were sold within the time agreed. *Held*, that the former judgment in effect determined that upon the facts existing at the time it was rendered plaintiff was neither entitled to recover damages for delay, nor for a judgment removing defendants from their trusteeship; and that said judgment was conclusive and estopped plaintiff from any claim for relief based on facts occurring prior to said judgment; also, that no claim could be based upon the subsequent delay in selling the real estate.

The will provided that the executors should not be liable for any loss or damage except such as occurred " from their willful default, misconduct or neglect." The complaint alleged and the court found that defendants imprudently and carelessly invested a portion of the fund set apart for plaintiff in insufficient securities, but such imprudence was not alleged or found to have been " willful." *Held*, that a judgment requiring defendants to restore to the trust fund the amount so invested was not authorized.

A testator has the right to impose the terms and conditions under which his bounty shall be distributed, and the court has no authority to increase the responsibility of, or impose obligations upon, the trustees selected by him from the burden of which he has in his will protected them.

It did not appear that any loss had actually occurred to the income because of such investments, and it seemed probable that no loss would even eventually occur to the fund itself, and the evidence disclosed no ground for imputing bad faith or want of prudence in making said investments. *Held*, that a judgment removing defendants was not justified ; that if they acted in good faith subsequent events which they could not foresee, over which they had no control, could not render them liable.

While trustees will be held to great strictness in their dealings with trust property, the courts will regard them with leniency when it appears they have acted in good faith.

Defendants were required by the will to invest in bonds and mortgages " on unincumbered real estate." At the time of a loan upon bond and mortgage there was an unpaid tax upon the land. *Held*, that this was not a violation of the provision ; that the tax was not an incumbrance within the meaning of the provision.

(Argued March 9, 1883 ; decided March 27, 1883.)

CROSS APPEALS from judgment of the General Term of the City Court of Brooklyn, entered upon an order made February 27, 1882, which affirmed a judgment entered upon a decision of the court at Special Term.

The nature of the action and the material facts are stated in the opinion.

*Nathaniel C. Moak* for plaintiff. The trustees were creatures of the will, and compelled to follow exactly any explicit directions therein contained. (Perry on Trusts, § 460.) Where an unauthorized investment is made, a trustee is invariably liable ; and his good faith, purity of intention and subsequent diligence in endeavoring to prevent the loss will be no protection to him. (*May* v. *Dreker*, 61 Ala. 53.) The provision of the will that investments should be made on unincumbered real estate was not complied with when the loan of $5,000 was made as there were unpaid taxes on the land, and the executors were not relieved from liability by the provision of the will that they should not be liable for any loss or damage except what occurred " from their willful default, misconduct or neglect." (*Dosier* v. *Brereton*, 15 Beav. 221 ; *Adair* v. *Brimmer*, 74 N. Y. 552 ; *Kimball* v. *Beding*, 31 N. H. 352 ; *Baker* v. *Disbrow*, 18 Hun, 29 ; *Quackenbush* v. *Southwick*, 41 N. Y.

117, 122; *Matter of Morgan* 63 Barb. 621; Perry on Trusts, §§ 279, 427, 539–549.) The prior suit was no bar to the relief allowed by the present judgment. (*Dawley* v. *Brown*, 79 N. Y. 390, 397–400; *Van Boskirck* v. *Herrick*, 65 Barb. 250; *Brown* v. *Gallaudet*, 80 N. Y. 413; *Kirby* v. *Daly*, 63 id. 659; *Kerr* v. *Hayes*, 35 id. 331; *White* v. *Madison*, 26 id. 117; *Lawrence* v. *Cabot*, 41 N. Y. Sup. Ct. 123; *Jones* v. *Underwood*, 13 Abb. Pr. 393; *Tyler* v. *Willis*, 35 Barb. 213; *McDonald* v. *Christie*, 42 id. 37; *Smith* v. *Weeks*, 26 id. 464; *East N. Y. & J. R. R. Co.* v. *Elmore*, 53 id. 624; Greenl. on Ev., § 532 [13th ed.]; Wharton on Ev., § 988; *Dawley* v. *Brown*, 79 N. Y. 390, 397–400; *Kirby* v. *Daly*, 63 id. 659; *Smith* v. *Weeks*, 26 Barb. 464; *Stowell* v. *Chamberlain*, 60 N. Y. 273.) The claim for loss on the real estate was not barred by the former action, because it was not asserted in the complaint or on the trial of that action. (Perry on Trusts, §§ 439, 462; *Cromwell* v. *County of Sac*, 94 U. S. 351; *Stowell* v. *Chamberlain*, 60 N. Y. 273 · *Marcellus* v. *Countryman*, 65 Barb. 201.)

*Matthew Hale* for defendants. Plaintiff has already had her day in court to obtain the relief which she now asks for. If the judgment then awarded her was not as full as she was entitled to, her remedy was by appeal, and not by a new action. (*Cook* v. *Grant's Adm.*, 1 Paige, 407; *Lockwood* v. *Fawcett*, 24 S. C. 146; *Inslee* v. *Hampton*, 11 Hun, 156; *Hoff* v. *Myers*, 42 Barb. 270; *Gates* v. *Preston*, 41 N. Y. 113; *Brown* v. *Mayor*, 66 id. 385, 390; *Blair* v. *Bartlett*, 75 id. 150; *Jordan* v. *Van Epps*, 85 id. 427–432; *Church* v. *Kidd*, 88 id. 652.) The only cases in which it is allowable to inquire into the evidence produced on the trial of the former action are cases where, from the absence of formal pleadings in the first suit, or their obscurity, the record fails to show what were the actual issues between the parties. (*Young* v. *Rummell*, 2 Hill, 478; *Campbell* v. *Butts*, 3 N. Y. 173; *Doty* v. *Brown*, 4 id. 71; *Brown* v. *Gallaudet*, 80 id. 413; *Wood* v. *Genet*, 8 Wend. 9; *Ehle* v. *Bingham*, 7 Barb. 494; *Gardner* v. *Buck-*

*bee*, 3 Cow. 120.) The fact that the plaintiff, whether intentionally or unintentionally, failed to produce any evidence or sufficient evidence in support of any of the issues presented by the pleadings, does not entitle her to bring another suit upon those issues. (*Ogsbury* v. *La Farge*, 2 N. Y. 113.) The question of negligence was a question of law, and had the case been tried by a jury upon the evidence it would have been the duty of the court to direct a verdict for the defendants. (*Mitchell* v. *N. Y. C. & H. R. R. R. Co.*, 64 N. Y. 655.) The taxes, which were unpaid on the property on which $5,000 was loaned by the executors, were not such an incumbrance as was contemplated by the testator when he directed the investments to be made upon unincumbered real estate. (*Craft* v. *Williams*, 88 N. Y. 384, 391; *Chesterman* v. *Eyland*, 81 id. 398; *Wiggins* v. *Howard*, 83 id. 613; *Ormiston* v. *Olcott*, 84 id. 339; *Lansing* v. *Olcott*, 1 Abb. Pr. [N. S.] 280, 288–9; *Sidenberg* v. *Ely*, N. Y. Daily Reg., Nov. 13, 1882.) The care required of trustees is such as prudent and intelligent men use in their own affairs. (*Roosevelt* v. *Roosevelt*, 6 Abb. N. C. 447; *Knight* v. *Earl of Plymouth*, 3 Atk. 480; Dickens, 120; *Thompson* v. *Brown*, 4 Johns. Ch. 619; *Higgins* v. *Whitson*, 20 Barb. 141; Lewin on Trustees, 152; Story's Eq. Jur., § 1273; *Ormiston* v. *Olcott*, 84 N. Y. 339–347; *Litchfield* v. *White*, 7 id. 438.) The objection to the admission of Mr. New's evidence, as to what occurred on the former trial, was well taken, and is fatal to the judgment. (*Tabor* v. *Van Tassell*, 86 N. Y. 642–643; *Foot* v. *Beecher*, 78 id. 155; *New York Guaranty Co.* v. *Gleason*, id. 503–517; *Capron* v. *Thompson*, 86 id. 418–421; *Pinney* v. *Orth*, 88 id. 447.) Trustees are to be allowed six months to find an investment. (*Dunscomb* v. *Dunscomb*, 1 Johns. Ch. 508; *Gilman* v. *Gilman*, 2 Lans. 1; *DePeyster* v. *Clarkson*, 2 Wend. 77.) The court had no jurisdiction to appoint a new trustee in this action. The necessary parties were not before it. (*Powers* v. *Bergen*, 6 N. Y. 358; *In re Empire City B'k*, 18 id. 199; *Rockwell* v. *Nearing*, 35 id. 302; *Shaver* v. *Brainard*, 29 Barb. 25; *Stuart* v. *Palmer*, 74 N. Y. 183.)

RUGER, Ch. J.   This case comes here on cross appeals from the judgment of the General Term, affirming a final judgment rendered in the City Court of Brooklyn. Each party by appropriate provisions contained in their respective notices of appeal seeks also to review an interlocutory judgment previously rendered in the action.

The circumstances out of which this action arose are as follows : Isaac Young died before July, 1868, having previously made his will, and leaving a considerable estate to his five children, Isaac H., Robert B., John L., William A. and Margaretta Young, the plaintiff, the defendants Isaac H. and Robert L. Young were made executors.   The estate consisted of four pieces of real property, some of which were unproductive, and personal property of the value of about $80,000.

The will and codicils made provisions which may be stated concisely as follows : To each of the defendants was devised one-fifth of all of his property absolutely.   The shares of the other three children, each consisting of one-fifth of the estate, were devised to the defendants in trust to invest and pay over the income arising therefrom to the respective devisees during their natural lives, and the share to the income of which the plaintiff was entitled, was upon her death to go to her heirs and next of kin.

The executors were empowered to sell, lease and dispose of, or to partition the real estate, and they were directed to invest the moneys accruing from plaintiff's share of the proceeds in bonds, secured by mortgages upon unincumbered real estate, situated in the State of New York, and to keep said trust funds at all times distinct from the other trust estates created by said will. It was further provided that said executors should not be answerable for any loss or damage happening to the estate, except such as occurred from their willful default, misconduct or neglect, and that each of said executors should be liable to account only for the moneys which come into his individual hands.   The plaintiff had no parents or children living, and in the event of her decease, her brothers would apparently become her heirs at law.

This action was commenced in March, 1879, against the

executors, and sought substantially these measures of relief: *First.* To recover of the defendants the sum of $10,000 for loss of income, to which the plaintiff claimed she was entitled, by reason of an alleged wilful and fraudulent delay of said executors and trustees in selling the real estate left by the testator, and adding one-fifth thereof to the plaintiff's trust fund. *Second.* To cause the defendants to reimburse to the plaintiff's trust fund the sum of $8,000, alleged to have been imprudently loaned by them in two several mortgages of the respective amounts of $5,000 and $3,000, and which are claimed to have resulted in an apparent loss to the trust fund. *Third.* To obtain the removal of the defendants as trustees of said estate. The grounds for this claim of relief do not appear in said complaint, except inferentially they may be presumed to be founded upon the allegations of misconduct thereinbefore described.

The answer consists: *First.* Of what may be briefly termed a general denial. *Second.* A former adjudication of all matters of difference between the parties by the surrogate of the proper county in October, 1874. *Third.* A former adjudication of all of the alleged causes of action arising out of the delay of the executors in selling said real estate, in an action in the City Court of Brooklyn, in which final judgment was rendered in June, 1876. *Fourth.* The statute of limitations. Under this state of the pleadings, a trial was had at Special Term which resulted in a judgment for $1,826.69 and interest in favor of plaintiff for defendants' delay in selling real estate, also removing them as trustees of plaintiff's share in said estate, and appointing another trustee, and requiring Isaac H. Young to restore to said trust fund $8,000 and interest thereon, on account of the said alleged improvident investment, and gave the plaintiff's attorney an allowance of $1,500 with costs, to be collected personally out of the defendants.

Upon appeal to the General Term of the City Court, taken by defendants, that court reversed so much of the judgment of the Special Term as awarded $1,826.69 and interest to the plaintiff, and affirmed the remainder thereof, and remitted the

parties to the Special Term to carry out certain special provisions contained in the judgment. After an appearance by the parties before the Special Term, and their compliance with the special direction required by what was termed the interlocutory judgment, final judgment was rendered at said Special Term to the effect above described, which was on appeal affirmed at the General Term. From this judgment both parties appeal to this Court, the plaintiff from so much of said interlocutory judgment as reversed the award to her by the Special Term of $1,826.69 and interest, as damages for defendants' delay in selling real estate, and the defendants from the rest of said judgment.

Appropriate exceptions have been taken to raise each of these questions, and their consideration requires us to examine the findings of the court below and such evidence as bears legitimately upon them.

On the trial the plaintiff put in evidence a judgment of the City Court of Brooklyn in an action wherein she was plaintiff and Isaac H. Young, Robert B. Young, John L. Young, William A. Young and others were defendants. The complaint in the action, among other allegations, charged Isaac H. and Robert B. Young with willful and fraudulent misconduct in the management of the estate of Isaac Young, deceased, and delay in selling the real estate, whereby she claimed that she had suffered great damages in the loss of income therefrom, and demanded judgment that the executors be directed immediately to sell said real estate and invest her share thereof, and that they pay over to her the income which they had and also that which they might with due diligence have received from the one-fifth part of said estate, and that some suitable person be appointed to take charge of that part of the funds in which she was interested, or that the trustees give security for the performance of their duties as trustees. The defendants Isaac H., Robert B., John L. and William A. Young, each answered said complaint substantially denying the allegations of improper conduct therein charged against Isaac H. and Robert B. Young, and alleged that there had been no intentional delay in selling

said real estate, that constant efforts had been made to effect a sale thereof, but the same had been ineffectual for the reason that the market for the sale of real estate had been so depressed that it could only be made at any time previous thereto except at inadequate prices with great loss to all of the parties interested.

Upon the issues thus formed a trial was had between these parties and judgment rendered therein in June, 1876, whereby the trustees were directed to sell said real estate at public auction within five months from the entry of said judgment, and proceed to divide said estate into five equal parts, keeping the trust funds separate and distinct from each other, and pay over the income of one of said shares, after deducting all proper and necessary charges thereon, to said plaintiff. Extra allowances were ordered of $2,000 to the plaintiff and $1,250 to the defendants Isaac H., Robert B. and John L. Young, to be paid out of the estate. The judgment also suspended Robert B. Young on the ground of his insolvency from acting as trustee until the further order of the court. The court below on the trial of the present action found the further fact that all of said lands were sold by the executors in the year 1878 for the aggregate sum of $15,950, and that the delay in the sale thereof after the said judgment in June, 1876, was consented to by plaintiff upon the request of defendants. It appeared in evidence that she received a pecuniary consideration from defendants for such consent. Immediately on the heel of this former judgment and apparently with a view of complying with its provisions, the defendants set apart securities of the appraised value of $21,673.97, and executed a written declaration stating that they held such securities in trust for the plaintiff under the provisions of the will of Isaac Young, deceased. This selection of securities was approved as to character and amount by the plaintiff's attorney in that and also the present action.

Upon these facts we are of the opinion that there was no evidence in the case which authorized the court below to charge the defendants with damages occasioned to the plaintiff

on account of the delay in selling the real estate in question and investing its proceeds, neither do we think that any evidence in relation to such delay was competent or material as the basis of a charge against these defendants of improvidency or willful or fraudulent misconduct in the management of such trust estate.   So far as the charge of misconduct related to the period subsequent to the former judgment the court find that the delay was expressly authorized and approved by the plaintiff, and there is nothing in the case to show that it was not a wise and prudent measure.   In fact the other four joint-owners, two of whom were *cestuis que trust*, with interests identical with those of plaintiff, approved the management of the trustees and voluntarily paid the plaintiff a considerable sum to induce her to consent to such delay.

The determination of the former action by the judgment of the City Court was an adjudication as to all of the questions litigated therein and was conclusive upon the parties to this action until reversed.   It is, therefore, seen that that action adjudicated the question that upon the facts existing at the time of such judgment the plaintiff was neither entitled to recover damages for delay in selling said real estate, or to a judgment removing the defendants from their trusteeship under the will. That judgment shows that the court passed not only upon the question of the amount of the fund to the income from which plaintiff was then entitled, as was held by the General Term, but also upon the question of the removal of the defendants. In fact they did suspend one of said trustees upon the ground of his insolvency, and as to the other trustee they directed him to proceed and execute the duties of his trust, thus impliedly refusing to remove him from his position as trustee.

These questions were all legitimately raised by the pleading in that action, and were either actually decided or necessarily determined in arriving at the conclusion embodied in the judgment.   We, therefore, affirm the decision of the General Term, holding that the plaintiff was estopped by that judgment from claiming or recovering damages on account of the

delay exercised by the executors in disposing of the testator's real estate.

The only finding of fact in the court below charging the defendants with willful misconduct in the management of said estate related solely to their action in delaying the sale of said real estate, and we must assume that the judgment of removal was based largely if not wholly upon this finding. We see no reason why the former adjudication was not as conclusive of the question of defendants' misconduct as it was upon the question of delay in selling the real estate, and we are, there-fore, of the opinion that the court below erred in directing the removal of the defendants from their trusteeship unless some other sufficient ground therefor arising subsequent to June, 1876, appears in the evidence.

It is claimed that the defendants were also guilty of miscon-duct in the year 1876 in relation to the investment of trust funds in bonds and mortgages upon real estate in the city of Brooklyn. The complaint does not allege the carelessness or imprudence of the defendants in respect to such invest-ment to have been " willful," neither do the findings of the court below thus characterize the action of these trustees. It is quite clear that they cannot be held liable to replace the moneys lost through even an improvident or careless invest-ment, unless they have acted willfully and have intentionally disregarded the rules which control and regulate the action of prudent and careful men in conducting their own business affairs.

The will of the testator expressly exempts them from liabil-ity " for any loss or damage that may happen to my estate ex-cept the same shall occur or take place from their own willful default, misconduct or neglect." The testator had an absolute right to select the agencies by which his bounty should be dis-tributed and to impose the terms and conditions under which it should be done. He well knew the character and qualifica-tion of those whom he selected as his trustees, for they were his own children, and while they were engaged in the per-formance of a lawful duty which he intrusted to them, the

court has not the right to increase the measure of their responsibility or impose obligations from the burden of which he has in his will so carefully protected them. We think, therefore, in the absence of any finding to the effect that the conduct of the defendant Isaac H. in making such investments was willful or fraudulent, that the court below erred in holding that he was liable to replace the amount of such investment in the trust fund.

There still remains to be considered the question as to whether the conduct of these defendants in dealing with this estate since June, 1876, has been so negligent, careless and improvident as to justify the claim that it was willful and authorized their removal from the trusteeship and the appointment of another in their place.

Trusts of property are generally created for the benefit and support of the young, helpless and inexperienced, and depend largely for their proper administration upon the honesty and capacity of those to whom they are confided. From the fact that those who are most immediately interested are usually incapable of properly guarding their own interests, and must necessarily depend so much upon the good faith of others, the court will guard their rights with jealous care and scrutinize closely the conduct of trustees with the view of holding them to a high degree of responsibility in the management and control of trust estates. But while trustees are thus held to great strictness in their dealings with the interests of their beneficiaries, the court will regard them leniently when it appears they have acted in good faith, and if no improper motive can be attributed to them, the court have even excused an apparent breach of trust, unless the negligence is very gross. (Perry on Trusts; *Lansing* v. *Lansing*, 1 Abb. Pr. [N. S.] 288.) We would not in the least degree impair the force of the well-settled rules on that subject or encourage laxity in the conduct of trustees in the management of trust estates, but in this case and with reference to these defendants, we think the court below have gone beyond any established rule and have held them to a stricter degree of responsibility than ought generally to be required from executors and trustees. It does not appear from

the evidence given on the trial that any loss has actually occurred to the income from the trust fund in consequence of these investments; indeed it seems quite probable that no loss will even eventually occur to the fund itself.

Although the defendants in the exercise of a permissible discretion (*Chesterman* v. *Eyland*, 81 N. Y. 398; *Ormiston* v. *Olcott*, 84 id. 339), and in order to avoid eventual loss, have felt obliged to foreclose the mortgages and take the title to the real estate upon which they were liens, there has nothing yet transpired to show that this proceeding will result in any loss. In fact it was shown upon the trial that upon this investment of $8,000, the trustees are now in the receipt of rents amounting to about $800 annually, and with a reasonable probability that the property may be sold for enough to cover the entire amount of both of the loans complained of. The presumptions against careless or imprudent conduct on the part of these defendants in the investment and management of this fund are natural and almost irresistible. They are apparently the natural heirs of the plaintiff and presumptively will be entitled to the trust fund after the termination of her life estate. They, therefore, have every interest in preserving instead of wasting it. They are required by the will to invest the funds in a limited way, viz., on bond and mortgage upon unincumbered real estate situated in the State. They invested these moneys in strict accordance with their authority, and at a time when from the abundance in the money market such securities were scarce and difficult to obtain.

The evidence produced by the plaintiff on the trial in support of the charges of misconduct on the part of the trustees in making the investments in question seems entirely insufficient to sustain the findings. Except the strong apparent desire of the plaintiff to direct and control the management of the trust estate, and the refusal of one of the defendants when giving evidence in this case to say that he would take the two lots in question and replace their cost in the trust fund, there is but little proved or alleged against the defendants

The only witness produced by the plaintiff upon the value

of this property testifies that the McComb street lot and build-
ing upon which the $5,000 loan was made was worth in 1876
from $5,100 to $5,400, and that the lot and building on Ninth
street would have cost about $4,000 in 1876. It further
appeared that the loan on the McComb street house was made
by the purchase of an existing mortgage thereon, which was at
the time of the loan paid down from $7,500 to $5,000 to meet
the amount which the defendants desired to invest. In opposi-
tion to this evidence, the defendants proved by a number of
capable and apparently experienced witnesses that the McComb
street house was worth from $9,000 to $10,000 in 1876, and
that the officers of a banking institution in Brooklyn at the
same time, with the loan in question, loaned $5,000 on a mort-
gage upon a similar house in the same block.

The Ninth street house was by the same witnesses shown to
be worth in 1876 from $4,600 to $6,000 and rented for $350
per annum. Upon this evidence we cannot see any ground
for imputing a want of prudence to the defendants in making
the loan in question, much less bad faith in the management of
this estate. If the defendants acted in good faith in making
these loans, subsequent events which they could not foresee
and over which they had no control, operating to depreciate
the value of these securities, would not render them liable to
make good such loss to the estate. Such a rule would require
a trustee to forecast the future with infallible accuracy, and in
case of failure to do so, make him responsible for the conse-
quences, even though he exercised the greatest caution and
prudence in making investments. Under such a rule no
prudent man would or could safely undertake the management
of a trust estate, and it would be difficult to obtain honest and
reliable men to accept what is a very necessary but is often a
thankless and troublesome duty.

We apprehend the court below mistook the actual position of
these parties and did not sufficiently realize that the defendants
were by the testator exclusively intrusted with the duty of manag-
ing and controlling this fund. The testator deliberately ex-
cluded the plaintiff from the performance of this duty, and

conferred it upon the defendants, and when she seeks to over-see and supervise the management of the trust fund, she exceeds the power which the will confers upon her. While it would not be improper that these trustees should consult the plaintiff with reference to the investment and management of such fund, yet they were under no legal obligation to do this, and their neglect to do so is not misconduct or conclusive evidence of carelessness or bad faith. It was suggested on the argument as a reason why the defendants should be removed from their trusteeship that their interests were hostile to those of the plaintiff. We think this is not necessarily so, but even if it was, the testator, who knew the relations of the parties and their opposing interests, if any such there were, chose to impose this trust as the condition upon which he gave the plaintiff an interest in his estate, and she can acquire that interest only through an acquiescence in the terms which accompany the gift. It is also claimed that the existence of an unpaid tax of about $160 upon one of these lots at the time of the loan in question was a violation of that provision of the will which required investments to be made in mortgages upon unincumbered real estate. Although an unpaid tax is doubtless an incumbrance on the land upon which it is laid, yet we think it was not such an incumbrance as was in the contemplation of the testator when he inserted this provision in his will. Not only was its amount trivial in comparison with the value of the lot, but there is comparatively but a short time in the course of a year when a tax upon real estate is not either levied or impending over it, and to call a tax an incumbrance within the meaning of this provision would give it an unreasonable and impracticable construction. (*Croft* v. *Williams*, 88 N. Y. 384; *Chesterman* v. *Eyland*, 81 id. 398.)

The views which we have expressed in regard to this case render it unnecessary to discuss the effect of the adjudication before the surrogate in 1874, or as to whether all of the parties interested in the trust fund and entitled to be heard on the question of a change of trustees are now before the court.

The interlocutory judgment of the General Term reversing

the judgment of Special Term awarding $1,826.69 and interest to the plaintiff should be affirmed. And the judgments of General and Special Terms removing the defendants as trustees, and appointing another in their place, and requiring the defendant Isaac H. Young to restore the sum of $8,000 and interest to the trust fund, should be reversed and a new trial ordered, costs to abide the event.

All concur.

Judgment accordingly.