## In re NICHOLS' ESTATE.

### S. F. No. 829; November 12, 1897.

#### 50 Pac. 1072.

**Insolvency—Liability of Assignee.**—An assignee of an insolvent who has acted in good faith and with reasonable care will not be held liable for mistakes of judgment.

Insolvency—Sale En Masse.—The Proper Remedy, where personal property is sold by an assignee of an insolvent en masse, and would have brought a larger price if sold in parcels, is to move the court to set aside the sale.

Insolvency.—An Assignee of an Insolvent cannot be Charged with the difference between what the property brought and what the court held it would have brought if sold in parcels, if he acted in good faith and with reasonable care.

APPEAL from Superior Court, Santa Clara County; John Reynolds, Judge.

In the matter of the estate of J. H. Nichols, an insolvent debtor. Appeal from an order settling appellant's account as assignee. Modified.

I. S. Thompson for appellant; H. E. Wilcox, D. M. Burnett and N. E. Wretman for respondent.

HAYNES, C.—Appeal from an order settling an account of appellant as assignee of said insolvent debtor. The principal question arises out of the sale of certain property of the insolvent by the assignee, the proceeds of which are embraced in said account, and to which account the Madera Flume and Trading Company, a creditor, filed exceptions. Said property was sold at public auction, after due notice, on the twenty-eighth day of July, 1896, and consisted of a planing-mill known as the "Mechanics' Mill," and all its contents, including engines, boilers, belting, four machines, and two horses, two wagons and two sets of harness used in and about said mill, and all of which was used by said insolvent up to the time of filing his petition in insolvency; also about 40,000 feet of lumber, a lot of moldings and mill work, office furniture, including one safe, and the buildings and lease—all of which were sold together as one parcel. At the date of the sale there was subsisting a chattel mortgage to secure the sum of $1,000 upon the engines, boilers, four machines and belting, used in and about the mill, but it did not cover any of the other property. It also appears that the lessor claimed the engines and boilers as part of the realty. When said property was thus offered for sale as a whole, and not in parcels, and before any bid was made, said Madera Flume and Trading Company objected to the sale in that manner, and demanded that it be sold in parcels, but

said objection and demand were disregarded by the assignee. Several bids were made, and among them said Madera Flume Company bid $675, and Frank Mabury then bid $700, and, that being the highest bid made, the property was struck off to him, and before he paid the purchase money said Madera Flume and Trading Company repeated its said protest and demand. When the assignee filed his said account he reported said sale, and prayed that his account be settled and allowed, and said sale approved and confirmed; and in the Madera Flume Company's exceptions the said objections were in effect repeated, and it was alleged that $700 was an inadequate price, and that if it had been sold in parcels it would have brought a sum largely in excess of $700, and prayed that said sale be not approved or confirmed, nor said account settled or allowed. Upon the hearing evidence was heard touching the value of said property, but said evidence is not set out in the bill of exceptions. It is only said "that the evidence was conflicting as to the value of said property on the twenty-eighth day of July, 1896," the day on which the sale was made. The court found that at that date said property was of the value of $850, "and would have realized that amount if sold in parcels," and charged the assignee with the sum of $150.

In appellant's brief it is said that "there was no evidence establishing the fact or even tending to show that the mill would have brought more if sold in parcels." It is true the bill of exceptions only shows that there was evidence of the value of the property on the day of sale, and is entirely silent as to whether there was evidence tending to show that it would have brought more if sold in parcels. But if there was no evidence of that character the bill of exceptions should have so stated. We cannot presume there was none, since error should appear affirmatively or by necessary implication. Difficult as it must be to determine that a sale in parcels would have produced a given sum in excess of the price at which the property was sold, the finding of the court must be accepted, leaving only the question whether the assignee should be charged with that sum, or any sum in excess of the amount actually received. The insolvency act of 1895 provides:

"Sec. 25. The said assignee shall have power: . . . .
(4) From time to time to sell at public auction all the estate,
real and personal, vested in him as such assignee, which
shall come to his possession, and as ordered by the court.
(5) On such sales to execute the necessary conveyances and
bills of sale'': Stats. 1895, p. 140.

The order of the court required him to sell all the prop-
erty of the insolvent then in his hands to the highest bidder
for cash, and to execute to the purchaser all necessary con-
veyances and bills of sale. Neither the statute nor the order
required the sale to be made subject to confirmation by the
court. In that respect such sales are like execution sales
in this state, yet sales under execution are frequently set
aside upon motion for irregularities, such as selling en masse
when the property should have been sold in parcels, if it is
made apparent to the court that a larger sum would have
been realized if the property had been sold in parcels: Hude-
pohl v. Mining Co., 94 Cal. 588, 28 Am. St. Rep. 149, 29 Pac.
1025. This remedy is not confined to sales of distinct par-
cels of real estate en masse for an inadequate price, but
applies also to similar sales of personal property: Georgeson
v. Lumber Co. (Cal.), 31 Pac. 257. Such is the usual and
appropriate remedy (Boles v. Johnston, 23 Cal. 226, 83 Am.
Dec. 111), and could have been properly resorted to in this
case, and, under the facts shown in the record, was the only
remedy.

The assignee is a trustee for the creditors, and his personal
liability must be determined by the law relating to trustees.
As to the degree of care and diligence required of them,
the authorities are by no means uniform. The varying facts
lead to various modifications in the expressions used by the
courts and text-writers. The general result of the cases
would seem to be that where the trustee has acted in good
faith and with reasonable care, he will not be held liable
for mistakes of judgment, and especially will not be held
liable for errors of judgment when acting in good faith, in
those cases where, as here, the beneficiaries of the trust had
full knowledge of the facts, and might have readily pro-
tected themselves against loss by promptly moving the court
to set aside the sale.

The Civil Code contains the following provisions relating
to trustees:

"Sec. 2228. In all matters connected with his trust a trustee is bound to act in the highest good faith toward his beneficiary, and may not obtain any advantage therein over the latter by the slightest misrepresentation, concealment, threat or adverse pressure of any kind."

"Sec. 2259. A trustee, whether he receives any compensation or not, must use at least ordinary care and diligence in the execution of his trust."

There is no charge, intimation or finding that the assignee did not act in the highest good faith and with at least ordinary care and diligence, and with a sincere desire to promote the interests of the creditors. He was himself a creditor to the extent of nearly one-half of all the claims proved. He was therefore personally interested in securing the best possible price for the property, and this self-interest is strong evidence of his good faith, and his belief that a sale en masse would bring a better price than could otherwise be obtained. The creditors were the beneficiaries of the trust and the equitable owners of the assigned property, and he was one of such equitable owners. Whether a sale in parcels would produce more was at the time of the sale a matter of opinion. The insolvent had no interest in the property, and was silent. How many of the thirty-one creditors were present does not appear, but the Madera Flume and Trading Company was the only one who requested a sale in parcels. If the matter were to be determined by the creditors, it should have been done in the manner provided for the election of an assignee, viz., by the majority in amount of the creditors present, and the only ones expressing an opinion were the flume company, whose claim was $520.56, and the assignee, whose claim was $2,107.37. This may not be conclusive, but it at least disposes of the contention that the assignee was bound to obey the demand that the property be sold in parcels; its only effect being to call the attention of the assignee to a consideration of the question as to which mode of sale would be most beneficial. The finding of the court that the property would have produced $150 more if it had been sold in parcels is conclusive, in this proceeding, of the fact that the assignee was mistaken; but it does not show that he did not "use at least ordinary care and diligence in the execution of the trust," and that is the measure of his "care and dili-

gence" laid down by the Civil Code as to all trustees. "Where trustees act in good faith and with due diligence, they receive the favor and protection of the court, and their acts are regarded with the most indulgent consideration; but where they betray their trust, or grossly violate their duty, or when they have been guilty of unreasonable negligence, their acts are inspected with the severest scrutiny, and they are dealt with according to the rules of strict, if not rigorous, justice": Burrill on Assignments, 6th ed., sec. 412. In Crabb v. Young, 92 N. Y. 66, it was said: "But while trustees are thus held to great strictness in their dealings with the interests of their beneficiaries, the court will regard them leniently when it appears they have acted in good faith, and, if no improper motive can be attributed to them, the courts have even excused an apparent breach of trust, unless the negligence has been very gross." And in the same case (page 67) it was further said: "The presumptions against careless or imprudent conduct on the part of these defendants in the investment and management of this fund are natural and almost irresistible. They are apparently the natural heirs of the plaintiff, and presumptively will be entitled to the trust fund after the termination of her life estate. They therefore have every interest in preserving instead of wasting it." This language is pertinent in the case before us. The insolvency act under which these proceedings were had, as well as the order of the court, is silent as to the mode of selling. In sales under execution personal property must "be sold in such parcels as are likely to bring the highest price," while real estate consisting of several known parcels or lots must be sold separately; but the judgment debtor may direct the order in which the property, real or personal, shall be sold: Code Civ. Proc., sec. 694. In the sale of personal property the officer uses his discretion in the absence of a direction by the judgment debtor, so that this section does not aid the respondent, unless the force and effect which the statute gives to the direction of the judgment debtor should be accorded to the demand of the Madera Flume Company in this case, and that, it is clear, should not be done.

Appellant also excepts to the order of the court directing the payment of the additional preferred claims, upon the ground that there are not sufficient funds for that purpose.

The total receipts reported by the assignee were $1,043.79. The court approved the disbursements as reported, amounting to $597.10, leaving a balance on hand of $446.69. At the time of filing the account the court ordered preferred claims amounting to $180.05 to be paid immediately, and they were paid before the hearing, leaving on hand at date of hearing $266.64. At the hearing the court allowed assignee's commissions, $72; attorney's fees, $150; and additional costs, $29.70; total, $251.70—leaving a balance in the hands of the assignee of $14.94. The court allowed and ordered paid additional preferred claims amounting to $253.25. Even if the charge of $150 against the assignee were proper, there would be a deficiency of $98.31. The assignee had recovered a judgment in justice's court for $99.70, and costs, $11.65; but the case was appealed to the superior court, and had not been tried. A suit was also pending to recover certain real estate. Except as to the matters involved in these suits, all the assets of the estate had been realized. Expenses were necessarily incident to the prosecution of these suits, and the result of them could not be anticipated with certainty. The order appealed from should therefore be modified by striking out the charge against the assignee of $150, and postponing the payment of the preferred claims until the further order of the court, and that the costs of the trial of said exceptions and this appeal be taxed to the Madera Flume and Trading Company.

We concur: Belcher, C.; Searls, C.

McFARLAND and HENSHAW, JJ.—For the reasons given in the foregoing opinion it is ordered that the court below modify the order appealed from by striking out the sum of $150 charged against appellant, and directing that the payment of said additional preferred claims be postponed until the further order of the court, and that the costs of the trial of said exceptions and of this appeal be taxed to the Madera Flume and Trading Company, and that as so modified the said order be affirmed.

TEMPLE, J.—I concur in the judgment.