(52 App. Div. 515.)

## In re OLMSTEAD.

(Supreme Court, Appellate Division, First Department. June 22, 1900.)

1. TRUSTS—TRUSTEE—ACCOUNTING.

Where a trustee, having power to loan trust funds on mortgage security, makes a loan as authorized, and is subsequently obliged to foreclose the mortgage, he is entitled, in his accounting, to charge against the estate the expenses of foreclosure, and all taxes and assessments paid on the property.

2. SAME—TRUST FUNDS—LOSS.

Under the provisions of a will empowering defendant, as trustee, to invest the trust funds, and excusing him from liability for any loss to the estate not occasioned by his gross personal neglect, defendant is not liable for loss occurring by reason of the extension of a mortgage without requiring a responsible party to assume payment of the bonds secured by it; for this is a mere error of judgment, and does not constitute gross negligence, within the meaning of the will.

3. SAME—GROSS NEGLIGENCE—TRUSTEE—LIABILITY.

Defendant, as trustee under a will, was empowered to invest the trust funds in bonds and mortgages on unincumbered real estate, worth double the sum loaned thereon, and was excused from liability for any loss to the estate, except when occasioned by his gross personal neglect or willful misfeasance. He made a loan as authorized, requiring the mortgagor to take out insurance on the property for his benefit as trustee; losses, if any, payable to him. The property was damaged by fire, and the damages assessed. *Held*, that the conduct of the executor in allowing the person in possession of the property, who was not the mortgagor, but one claiming under him, to receive the insurance money, on the latter's mere verbal promise to expend it in repairing the property, amounted to a loan of that sum without the security required by the will, and was such gross negligence as to make defendant liable for the sum so lost.

Appeal from surrogate's court, New York county.

Judicial accounting of Dwight H. Olmstead as trustee under the will of Noah T. Pike, deceased, in which Noah W. Pike, Noah T. Pike, Jr., Joseph S. Pike, Caroline C. Savage, and Susan C. Savage filed exceptions. From a decree of the surrogate overruling the exceptions, contestants appeal. Modified and affirmed.

For former opinion, see 49 N. Y. Supp. 104.

Argued before VAN BRUNT, P. J., and RUMSEY, McLAUGHLIN, PATTERSON, and INGRAHAM, JJ.

Henry H. Man, for appellants.
Charles D. Ridgway, for respondent.

INGRAHAM, J. By the will of Noah T. Pike, under which the respondent was acting, he, as sole trustee, was directed to invest the trust funds in bonds and mortgages on unincumbered, improved real estate, worth double the sum loaned thereon, or in bonds or stocks of the United States or of the state of New York; and the will further provided that the trustee should not be liable for any loss to the estate or to any trust fund, unless such loss be caused by his or her personal gross neglect or willful misfeasance. The respondent, acting as sole trustee, made a loan upon certain improved real estate in the city of Brooklyn, owned by one John G. Latimer, to secure the payment of the sum of $18,000. The property was improved, and no claim is made but that when the loan was made it was a proper invest-

ment. The mortgagors were required to insure the property for the benefit of the trustee, as mortgagee; and policies of insurance for $10,000, loss payable to the trustee, with the usual mortgage clause, under which the trustee was entitled to receive the amount of any loss occasioned to the property by fire, were procured by the mortgagor and delivered to the trustee. When the mortgage became due, the mortgagor who was upon the bond had died, and the property had become vested in Frederick B. Latimer, when an agreement between the trustee and Latimer was made, whereby the payment of the bond and mortgage was extended to May 1, 1895. The negotiation for this extension was made between the trustee and Latimer, and although by the death of the mortgagor, and the settlement of his estate, there was no one personally liable upon the bond, no request seems to have been made that the owners of the property, or the persons for whose benefit the mortgage was extended, should in any way assume the payment of the mortgage; and, if this extension had been valid, all liability of those who had received the property of the original mortgagor would have been released. The interest and taxes upon the mortgage seem to have been promptly paid until April, 1894, when a fire occurred which seriously injured the building upon the property. A short time after, the trustee was informed of the fire, and went to look at the property. He made, however, but a superficial examination,— simply looking in, and seeing that there had been a fire, and that the floor and beams in the lower part of the building had been burned. Without any further examination or investigation, at the request of Latimer the trustee handed to Latimer the policies of insurance, whereupon Latimer attended to the adjustment of the loss, which was adjusted at $3,400. There seems to have been a division of the amount payable by the insurance companies between the owners of the property and the trustee, but under the terms of the policies of insurance the trustee was entitled to receive all of this loss thus adjusted. The trustee was informed that the actual loss upon the property had been adjusted at $3,400, and was present with Latimer at the time of the payment of the loss. He then consented that the total loss should be paid to Latimer. There seems to have been an understanding between the trustee and Latimer that Latimer should apply this insurance money to the repairs to be made upon the building, but no formal agreement seems to have been made; the trustee simply allowing this money belonging to the trust estate to be paid to Latimer upon his verbal statement that he would use it to repair the building. It would seem that some contracts had been made by Latimer to make repairs upon the building, but before any work was done the whole building collapsed, thereby becoming a total loss, and it was never repaired. The trustee then waited until the time to which he had extended the mortgage, without making any effort to compel Latimer to restore the building, or collect the insurance from him, when he commenced an action to foreclose the mortgage; and after considerable delay, and an appeal to the court of appeals, the property was sold, leaving a large deficiency. Upon an accounting before the surrogate, the trustee charged against the estate all the expenses of the foreclosure, and all the taxes and assessments upon the property, to which

the beneficiary objected.   His accounts, however, were allowed by the surrogate, and from the decree settling such accounts this appeal is taken.

Under the terms of the will, whereby the trustee was only chargeable with gross neglect or willful misfeasance, we do not think that he should be charged with the deficiency caused by the extension of the time of payment of the mortgage.   While it has been held by the court of appeals, upon the appeal in the foreclosure action (Olmstead v. Latimer, 158 N. Y. 313, 53 N. E. 5, 43 L. R. A. 685), that this extension was void for want of consideration, the question was not free from doubt, and the trustee might well have been excused from putting the estate to the risk of the cost of an action brought before the extension had expired.   So in relation to the granting of the extension without requiring a responsible party to assume the payment of the bonds.   The utmost that can be said is that it was an error of judgment to grant such an extension, which could not be called gross neglect, within the meaning of this provision of the will.

The only serious question is as to the act of the trustee in consenting that the amount of the insurance money, which under the policies was payable to him, should be turned over to the person in possession of the property, upon a mere verbal understanding that it should be used in the repair of the building.   The rule to be applied in such a case is that stated in Crabb v. Young, 92 N. Y. 56, where it is said:

"It is quite clear that they cannot be held liable to replace the moneys lost through even an improvident and careless investment, unless they have acted willfully, and have intentionally disregarded the rules which control and regulate the action of prudent and careful men in conducting their own business affairs."

Here the will contained specific directions as to the securities in which the trust estate should be invested, and certainly a willful disregard of those directions would be gross neglect, within the meaning of this term as used in the will.   After this fire, under the terms of the policy of insurance held by the trustee, he was entitled to receive the total loss, up to $10,000.   The loss was adjusted at $3,400, and the validity of that adjustment is not attacked by the appellants.   We must assume, therefore, that that was a fair determination as to the amount that the insurance company should pay; but as that entire amount was payable to the trustee, and he was entitled to collect it from the insurance company, and the insurance company conceded its liability to pay, and as the trustee in effect received the amount agreed to be paid, by the consent under which the insurance company paid the money to Latimer, he must be charged with having received that amount.   Eddy v. Assurance Corp., 143 N. Y. 311, 38 N. E. 307, 25 L. R. A. 686.   The trustee then stands in a position of having received this amount of $3,400, and having paid it over to Latimer upon Latimer's undertaking to expend that money in repairing the loss caused by the fire.   As before stated, Latimer was under no obligation to pay the mortgage.   The trustee had in his hands, as a part of the estate, the proceeds of the policy of insurance.   He paid it to Latimer upon Latimer's undertaking to apply it to improve the property upon which the state held a mortgage.   The legal effect of this payment, it seems

to me, was a loan of the money to Latimer upon his promise that he would use it in adding to the building upon the premises, which would then become a part of the security for the mortgage. Such a loan was prohibited by the express terms of the will under which the trustee was acting. It was not a loan upon unincumbered real property worth double the sum loaned thereon, but a mere personal loan to Latimer, and the only security that the trustee had for its repayment was the personal obligation of Latimer to use it in repairing the property. When Latimer refused to apply this money to improving the property, the trustee had a cause of action to recover the money thus paid, or for damages for a breach of Latimer's obligation to restore the property to its former condition, and for that obligation the trustee had no security. Whatever meaning may be given to this term "gross neglect," as used in the will, a payment of a portion of the trust fund to a person not liable to pay a mortgage on real property, upon the understanding that he will use that money to repair a building upon the trust estate, without taking any security for the performance of the agreement, is a violation of the authority conferred upon the trustee. That the property was subject to the mortgage, and the payment of this sum was to the owner of the property, does not change the character of the transaction. The building had been seriously injured by fire. The trustee made no examination as to the extent of the injuries, but relied entirely upon the statement of the owner of the property. The exercise of the slightest care required the trustee to see that before the money should be paid over, so as to restore the mortgage to its full amount, the damage caused by the fire should have been repaired. There is no evidence that this building, in its damaged condition, and the property upon which it was built, were worth anything like double the amount of the mortgage; and it would certainly, I think, have been gross negligence for the trustee to loan the amount of this mortgage upon a building partly destroyed by fire, without taking any security for its repair. In my judgment, nothing can excuse such a treatment of the property confided to the trustee; and the loss to the estate of this sum of $3,400 was, as I look at it, the direct result of the trustee's relying upon the personal obligations of Latimer to apply the proceeds of the money to the repair of the building, and for this reason I think the trustee should be charged with the amount that was thus lost to the estate.

We agree with the surrogate in his disposition of the other questions presented, and the decree must therefore be modified by charging the trustee with this sum of $3,400, with interest from the date on which it was paid; and as thus modified it should be affirmed, with costs to the appellants against the respondent. All concur.