## In the Matter of the Estate of LOUIS N. KRAMER, Deceased.

Surrogate's Court, New York County, November 14, 1939.

*Mitchell, Taylor, Capron & Marsh* [*Edwin W. Cooney* and *Elmer J. Hoare* of counsel], for the City Bank Farmers Trust Company, trustee.

*Proskauer, Rose & Paskus* [*David Katz, Charles Looker* and *Edward Rubin* of counsel], for Nathan K. Galland, trustee.

*Chadbourne, Parke, Wallace & Whiteside* [*W. Hugh Peal* of counsel], for the Commercial National Bank and Trust Company of New York, as committee of an incompetent, objectant.

*Hays, Wolf, Kaufman & Schwabacher* [*Wolfgang S. Schwabacher, Ralph Wolf* and *Myron S. Isaacs* of counsel], for the objectants.

FOLEY, S. The report of the referee is confirmed in its entirety and all the exceptions thereto are overruled.

The objectants seek to surcharge the corporate cotrustee alone with the sum of approximately $360,600 and interest, for alleged negligence and even gross negligence in investing the funds of the trusts in participations of a certain mortgage and for failure to give notice to the life beneficiaries required by former section 188, subdivision 7, of the Banking Law. It was further contended that the real estate upon which the total mortgage of $2,800,000 was placed was not worth fifty per cent more than the amount of the loan, that the loan was imprudent and improvident and that it was negligently made, because there was no proper investigation or reliable appraisal of the real estate, and that the income of the

property was insufficient to meet the carrying charges, including taxes and interest upon the loan. Other grounds of negligence, self-dealing and lack of prudence in connection with the loan were asserted by the objectants. The cotrustee on the other hand contends that its officers and representatives acted in good faith and with the current exercise of prudence, vigilance and honest judgment.

The referee has overruled the objections and has found no legal basis for surcharge against the corporate cotrustee.

The situation is different from the ordinary case because of the clause of exoneration from liability on the part of the trustees which is found in the will. The testator provided in this clause: " I hereby authorize my said Executors and Trustees, in their discretion, to retain, change or substitute as they may see fit any investment or security of which I may die possessed and to sell, substitute, exchange or retain any one or all of the securities now held by me as a proper investment of monies to be held by them under the Trusts of this my Last Will and Testament, and in their discretion to invest monies held under said Trusts, in any security, real estate or personal corporate, public or private, in addition to those established by the laws of this State as proper investments for trust funds without either of my said Executors or Trustees being liable for such acts."

The testator appointed his brother and his nephew, Nathan K. Galland, as executors and trustees and provided that in the event of the death of his brother, The Farmers Loan and Trust Company be appointed executor and trustee in his place. The brother predeceased the testator and the successor corporation of the designated corporate fiduciary accepted appointment as coexecutor and cotrustee with Mr. Galland. The will expressly conferred upon the corporate fiduciary " the same power and authority as conferred upon my brother, Isidore H. Kramer."

The effect of clauses in varying forms exonerating fiduciaries from liability has been the subject of determination in numerous decisions by the courts of our State. (*Crabb* v. *Young*, 92 N. Y. 56; *Matter of Clark*, 257 id. 132; *Matter of Balfe*, 245 App. Div. 22; *Matter of United States Trust Co.*, 189 id. 75; *Matter of Reid*, 170 id. 631; *Lawton* v. *Lawton*, 35 id. 389; *Matter of Knower*, 121 Misc. 208.)

It is of importance here that the clause contains not only dispensation from liability, but also the widest grant of power and discretion to invest in securities other than those within the class of legal investments. The testator gave power and authority to the trustees to invest in common or preferred stocks, mortgages, real property, bonds, and even in the notes and other obligations of

private persons. " It is fundamental law that a testator or the creator of a trust has unlimited authority to direct how his money may be invested by his trustees, or may leave the manner of such investment completely in the discretion of his trustees. * * * In such a case, if an investment be challenged, the only questions are: *First*, did the trustees act within the limits of their discretion; and, *second*, was their discretion abused? " (SCOTT, J., in *Matter of Reid*, 170 App. Div. 631.) In the leading authority of *Crabb* v. *Young (supra)* the will provided that the executors, who were also the trustees, should not be answerable " for any loss or damage that may happen to my estate, except the same shall occur or take place from their own willful default, misconduct or neglect." Attack was made upon the retention of certain real estate by the executors and their conduct in investing in certain mortgages. The court stated that the " testator had an absolute right to select the agencies by which his bounty should be distributed and to impose the terms and conditions under which it should be done." It was further declared that the testator " well knew the character and qualification of those whom he selected as his trustees * * * and while they were engaged in the performance of a lawful duty which he entrusted to them, the court has not the right to increase the measure of their responsibility or impose obligations from the burden of which he has in his will so carefully protected them." It was further stated that while trustees are held to great strictness in their dealings with the interests of their beneficiaries, " the court will regard them leniently when it appears that they have acted in good faith, and if no improper motive can be attributed to them, the courts have even excused an apparent breach of trust, unless the negligence is very gross."

Again, in *Matter of Clark (supra)*, the leading recent case on the duties of trustees and the tests of liability for surcharge, the Court of Appeals had before it a clause of exoneration of trustees for retaining securities, which was much similar to that involved here. In the *Clark* case the trustees were authorized to retain investments " without any personal liability for so doing." In the present proceeding the will reads " without either of my said Executors or Trustees being liable for such acts." In the opinion of the court, written by Judge KELLOGG, it was stated: " The testator empowered his executors and trustees ' to continue all the investment of money in the securities made by me and which shall come into their possession and control at my decease, without any personal liability for so doing.' The very fact that the trustees, as well as the executors, were so authorized, indicates that the testator contemplated that the securities left by him might be held over an

extended period. Although, at the time of the executors' accounting, the sugar stocks had been retained by the executors for three years, the Surrogate absolved them of blame for not making disposal thereof, and directed that the stocks be turned over in kind to the trustee of the various trusts created by the will. The Surrogate then expressed his opinion as to the wishes of the testator in regard to the stocks that ' it was his desire that they should be kept at all hazards.' If such were his desire, equally was it his wish that they should be kept ' without any personal liability for so doing.' The testator had an absolute right to provide that his trustee should not be liable for losses accruing from the retention of the securities, although it may have been imprudent so to retain them. (*Crabb v. Young*, 92 N. Y. 56, 65.) In that case the testator had provided that his trustees should not be liable for losses except those arising ' from their own willful default, misconduct or neglect.' The court said: ' It is quite clear that they cannot be held liable to replace the moneys lost through even an improvident or careless investment, unless they have acted willfully and have intentionally disregarded the rules which control and regulate the action of prudent and careful men in conducting their own business affairs.' Our will does not go quite so far as the will quoted, but at least there must be evidence of lack of reasonable care."

Under the tests of the last sentence of this pronouncement, the referee has held in the pending proceeding that there was no evidence of lack of reasonable care. I am fully in accord with his conclusion. It does appear, however, that the clause of exculpation granted additional immunity to the trustees from that usually applied in a case of attempted surcharge where the will contains no such clause. It should be noted that section 125 of the Decedent Estate Law, which declares the inclusion of a clause of immunity to be against public policy, has no application to the existing proceeding, because here the testator died prior to the enactment of that section and its terms specifically exempt the estates of such persons from its operation.

Counsel for the objectants in their desire to obtain a surcharge seek to evade the directions of the testator and to nullify his grant of authority to the trustees to invest in securities outside the statutory permitted class and to destroy the exoneration granted by him to his trustees for liability in making such investments. The intention of the maker of a will may not be ignored in such easy fashion. As stated by Judge RIPPEY in *Matter of Kennedy* (279 N. Y. 255): " Within limitations with which we are not here concerned, a testator may make such disposition as he wishes of his property without interference by the courts or by those who may

believe that some other disposition would be more desirable or practicable." An unambiguous command of the testator cannot be disregarded. Words are " never to be rejected as meaningless or repugnant if by any reasonable construction they may be made consistent and significant." (CARDOZO, J., in *Matter of Buechner*, 226 N. Y. 440.)

Lack of reasonable care is no wider ground of liability than those grounds laid down in *King* v. *Talbot* (40 N. Y. 70) and *Costello* v. *Costello* (209 id. 252). Under the latter authorities the rule of responsibility is that trustees are bound in the management of all the matters of the trust, to act in good faith and employ such vigilance, sagacity, diligence and prudence as in general, prudent men of discretion and intelligence employ in like matters in their own affairs. Certainly effect must be given to the unequivocal directions of the testator and these directions must supply an additional immunity beyond what the law would give a trustee under the ordinary rule of liability, particularly when the testator's expression of confidence in the persons whom he had selected is so strongly shown. In section 222 of the Restatement of the Law of Trusts it is stated that a trustee will be relieved of liability for breach of trust by an exculpatory clause in a will or deed. Except under certain special circumstances the provision is ineffective " to relieve the trustee of liability for breach of trust committed in bad faith or intentionally or with reckless indifference to the interest of the beneficiary, or of liability for any profit which the trustee has derived from a breach of trust." There is not the slightest evidence in the present proceeding of any misconduct within the latter part of that rule.

The referee has correctly held that under the distinctive provisions of the will here, and particularly the clause of discretion in making investments and exoneration from liability and the right of the trustees to depart from the class of legal investments, that notice was not required to be given to the life beneficiaries of investments in participations in mortgages. He has cited several authorities in support of that conclusion, particularly *Matter of Clark* (165 Misc. 801, WINGATE, S.) and *Matter of Balfe* (245 App. Div. 22). It is obvious that if the trustees were authorized to invest in securities outside of the legal class that they were relieved of every form of statutory limitation or requirement as to legal investments when they selected and actually made the investment. Thus they were not restricted to the placing of a mortgage representing not more than sixty-six and two-thirds per cent of the value of the property to which a legal investment is confined. Under the will they might properly have invested in a mortgage of seventy per cent or even a

higher percentage, if bad faith or personal interest was absent. They might even have properly invested in the fee of real estate.

For no greater reason were they compelled to give the statutory notice to the life beneficiaries under section 188 of the Banking Law after investment in the participations. Not to have given it was neither negligence, improvidence or evidence of bad faith. They were no more required to give it in the case of a participation than they were required to give such notices in the event of a purchase out of the trust funds of any other form of security.

In *Matter of Balfe* (245 App. Div. 22) the Appellate Division, Second Department, had before it a will containing clauses of the broadest grant of discretion as to investments and specific authority to purchase securities from the corporate trustee. It was held that the " purchase of mortgages from itself, otherwise illegal, became lawful perforce the provisions in the will, making inapplicable the case law and statutory safeguards, because they were bought in good faith." It was further held that the question resolved itself " into the proposition that the testator, as he had a right to do, deprived himself and his estate of the benefits of the rules of law found in the statutes and in the cases, which rules were designed to protect such estate funds. The only rule of law of the benefit of which he did not deprive his estate was that which requires a trustee to act honestly and in good faith."

In the present proceeding there was not the slightest evidence in the record of the type of self-interest or division of loyalty exemplified by the purchase for the trust of a security owned in individual title by the fiduciary. The law condemns such a transaction and brands it as a breach of trust. (*Matter of Long Island L. & T. Co.* [*In re Garretson*], 92 App. Div. 1; affd., 179 N. Y. 520; *Matter of Schmidt,* 163 Misc. 156.) In these cases purchases were of whole mortgages. They were not participations acquired under the system approved in *Matter of Union Trust Co.* (219 N. Y. 514) before the enactment of section 188 of the Banking Law or those acquired after the enactment of that statute for the specific purpose of allocation to various trusts and estates. Any element of self-interest in such acquired mortgages was removed by the decisions of the Court of Appeals in *Matter of Union Trust Co. (supra)* and *Matter of Flint* (240 App. Div. 217; affd., 266 N. Y. 607).

Finally, the surrogate approves the very careful analysis of the facts by the referee and his conclusions upon them as to the circumstances surrounding the actual placing of the Smalenbach mortgage and, particularly, the valuation and appraisal of the property and the conditions at the time of the making of the investment. He correctly applied the authorities to these facts in his extended report.

The referee has had special experience in the trial and determination of the issues involving investments in mortgage participations where surcharges were made or denied. In the consideration of the questions of fact, he had the opportunity of hearing and observing the witnesses as to the circumstances leading up to the placement of the mortgage and the value and condition of the property in the latter part of the year 1930. He had like opportunity to pass upon the facts as to the very small additional investment made in 1931. " To the sophistication and sagacity of the trial judge the law confides the duty of appraisal." (*Boyd* v. *Boyd*, 252 N. Y. 422, 429.) " Where truth hangs upon the credibility of witnesses, courts should consider the advantages of the trial court who has seen and heard the witnesses." (*Smith* v. *Smith*, 273 N. Y. 380, 383; *Boyd* v. *Boyd*, *supra*.) These observations apply with equal force to the determination of an experienced referee. (*Nottingham* v. *Nottingham*, *No. 1*, 209 App. Div. 459.)

Counsel for the principal group of objectants have very rigorously argued in their voluminous briefs for a modification of the referee's report. None of the arguments has any merit in law and the authorities cited in them have no direct application to the facts of the present proceeding. They seek a determination which would form a basis of surcharge not only in this estate, but in other estates, for negligence in the placement of the mortgage loan. The loan aggregated $2,800,000 and was allotted by participations to various trusts, testamentary, *inter vivos* and personal, and to the custodian accounts of individuals. If negligence did exist the amount of the liability would not deter the enforcement of a surcharge. In the absence of negligence, however, the courts should not be asked to strain to mulct the stockholders of the trustee in an amount of such magnitude. It should be noted that the contention of counsel for the objectants that these participations were bought directly from the corporate trustee is not substantiated by the evidence. There was no self-dealing in the accepted use of that term. The purchase was from the trustee, not as a bank or trust company, but as a trustee of other estates which held the specific securities purchased for this estate. There is no rule which prohibits a fiduciary of one estate from buying from itself as trustee of another estate, government or State or municipal bonds, or mortgages or other securities at a fair value.

The endless subtleties of controversy cannot conceal the true facts in evidence, nor can they be employed to abrogate the well-established rules and policies laid down in surcharge cases by the Court of Appeals. (*Matter of Clark*, 257 N. Y. 132; *Matter of Pinney*, 278 id. 507; *Matter of Doelger*, 279 id. 646; *Chemical Bank*

& *Trust Co.* v. *Ott,* 274 id. 572; *Matter of Smith,* 279 id. 479; *Mills* v. *Bluestein,* 275 id. 317.) One who reads and analyzes with care these decisions must learn that where a trustee or other fiduciary acts in good faith with reasonable care and unmotivated by self gain or personal dealing, he may not be surcharged for a shrinkage in value or an impaired condition of the security or property due to economic conditions over which he had no control.

The student of those cases must also be convinced that in no event can a trustee be held liable for mere error of judgment or for unfortunate results which he could not be expected to foresee and was powerless to prevent. (*Matter of Clark,* 257 N. Y. 132.)

Tax costs and submit decree on notice confirming the report of the referee and settling the account accordingly.