In the Matter of the Accounting of CITY BANK FARMERS TRUST COMPANY, as Trustee under an Agreement Made with PATRICK McGOVERN and Others, Appellant.

EDNA M. CRANE et al., Respondents.

First Department, April 18, 1946.

*Elmer J. Hoare* of counsel (*Mitchell, Capron, Marsh, Angulo & Cooney,* attorneys), for appellant.

*John McKim Minton, Jr.,* of counsel (*Jacob M. Mandelbaum* with him on the brief; *Morris Mitchell,* attorney), for respondents.

GLENNON, J. Clarence A. Crane, at the time of his death on December 5, 1927, was the secretary of the General Contractors' Association. The executive committee of the association appointed a subcommittee of three to take up a collection for the benefit of his widow and children. The members of this committee were Patrick McGovern, Harry Haggerty and John J. Watts. They collected the sum of $50,450. The executive committee then authorized the members of the subcommittee to dispose of the fund for the benefit of the widow and family "in trust or otherwise, as it sees fit." They turned over part of the fund to the widow and the balance of $48,000 was deposited with the City Bank Farmers Trust Company, the accountant, on the 14th day of May, 1928. The trust company

at that time was known as the Farmers Loan & Trust Company. The deposit of the fund was made pursuant to a trust agreement dated May 14, 1928.

The agreement provided that the trustee was " to invest and reinvest the said fund of $48,000 in real estate, mortgages, participation in mortgages, mortgage certificates, securities, stocks or bonds as it may in its discretion deem best, without being limited to the class of securities in which trustees are authorized by law to invest trust funds."

The income from the trust was made payable to the widow during her life with the remainder payable to her children. The widow was given the right, in each of the first ten years of the trust, to draw against the principal of the fund to the extent necessary to make available to her a total of $5,000.

The trust agreement provided in part as follows: " IV. The Trustee, or its successor, is authorized to retain, so long as it may seem proper so to do, any securities or property at any time in its hands hereunder, and also to sell the same, and from time to time in its discretion to invest and reinvest the proceeds thereof, and also any other cash at any time in its hands as Trustee, in such real estate, mortgages, mortgage participations, mortgage certificates, securities, stocks or bonds as to it may seem wise, without being limited to the class of securities or investments in which trustees are authorized by the laws of the State of New York to invest trust funds. The said Trustee, or its successor, is hereby released from any and all financial or other liability by reason of the retention, sale, investment or reinvestment by it of any part or the whole of the said trust fund or by reason of any depreciation therein."

The accountant, who is the appellant herein, invested $20,000 of the fund by way of participation in a mortgage in the sum of $60,000 which it loaned on certain property located at 677–679 Eleventh Avenue and 602–604 West 49th Street. The property was " L "-shaped and did not take in the southwest corner of 49th Street and Eleventh Avenue. The improvements consisted of two four-story and basement brick tenements with stores on the ground floor on Eleventh Avenue and a four-story brick building with a four-story frame building in the rear on 49th Street. The property was owned by Lillie Dairy Company, which incidentally had certain other properties in the immediate neighborhood. At the time the loan was considered the accountant's real estate committee had before it an appraisal made by Brown, Wheelock, Harris, Vought & Co., Inc., which set the value of the real estate at $100,000. The real estate

committee approved the loan on March 5, 1928, and a notation was made on its approval slip to the effect that the loan was "to close June 1, 1928." It might be noted in passing that this took place more than two months before the trust agreement was entered into.

The mortgage subsequently executed was dated June 4, 1928, and covered a period of three years. The rate of interest was originally fixed at 5½%. Interest was paid at that rate until December 4, 1931. In the interim between the time the loan was made and December 4, 1931, the economic depression with its consequent effect on real estate income and values occurred. As a result thereof, the accountant reduced the rate of interest to 4½% for a period of one year. Later the rate was further reduced as of June 4, 1932, to 3%. Until June 4, 1932, Lillie Dairy Company paid the interest on the loan when due. From that time on, due to financial stress, Lillie Dairy Company did not make regular payments of interest, with the final result that the mortgage was foreclosed and the property purchased by the accountant at the foreclosure sale on October 6, 1936. Later the bid was assigned to a salvage corporation known as 677–679 Eleventh Avenue Corporation, which took title to the property. The securities of the salvage corporation were distributed pro rata among the participants in the foreclosed mortgage in exchange for their interests in the mortgage.

The appellant by an order to show cause dated October 29, 1943, sought to have its account judicially settled and allowed. It was returnable on the 22d day of November of that year at Special Term. Francis L. Valente was designated to receive service of the order and the petition on behalf of the infants involved. The widow of the deceased together with her daughters and a son filed objections to the account. Francis L. Valente, who was appointed guardian ad litem for the infants by order dated the 10th day of December, 1943, filed his report which was dated May 23, 1944. Under the topic "Conclusion and Recommendation" he wrote: "I find a report after examining the account submitted on behalf of the trustee, that the assets were as set forth and that if no further facts be submitted at the time of the hearing before the Referee which will show negligence on the part of the trustee in the handling of this investment, I recommend that an order be entered herein judicially settling and approving the account, as against the infants herein."

The issues were heard by the referee who was designated in the order dated the 10th day of December, 1943. Considerable

testimony was taken. The referee recommended that the accountant "should be surcharged in the sum of $20,000, the amount invested by it, on June 4th, 1928, in the mortgage set forth in schedule B-1 of the account; with interest thereon at 5½% from June 4th, 1928, to the date hereof," giving a credit, however, to the accountant for all the income paid on the investment and set forth in Schedule D of the account. Other recommendations which are unnecessary to detail here were also made. Subsequently the court at Special Term confirmed the report of the referee dated October 18, 1944. As a consequence this appeal was taken.

We believe that the special guardian took a correct stand in not objecting to the account and that his conclusion was entirely sound. In determining the propriety of the acts of a trustee we must "look at the facts as they exist at the time of their occurrence, not aided or enlightened by those which subsequently take place." (PECKHAM, J., in *Purdy* v. *Lynch*, 145 N. Y. 462, 475, 476.) We are inclined to the view that the investment by the appellant in the mortgage was proper at the time it was made. An examination of the record must lead one to the conclusion that the appellant did not fail in the duties which it owed to the objectants. We cannot say that the investment made in 1928 was an improvident or careless one. At that time the accountant could not well have foreseen what was to and did take place in the real estate market some few years later.

Furthermore, the exculpatory clause was surely broad enough to exempt the accountant from surcharge where, as here, there was no willful negligence, self-dealing or bad faith. (*Crabb* v. *Young*, 92 N. Y. 56; *Matter of Clark*, 257 N. Y. 132.)

In *Crabb* v. *Young* (*supra*, 65), Chief Judge RUGER said, in part: "It is quite clear that they cannot be held liable to replace the moneys lost through even an improvident or careless investment, unless they have acted willfully and have intentionally disregarded the rules which control and regulate the action of prudent and careful men in conducting their own business affairs."

We have reached the conclusion, therefore, that the order at Special Term so far as appealed from should be reversed, with costs and disbursements to the appellant payable out of the estate; the objections to appellant's investment in the Lillie Dairy Company mortgage should be overruled; the referee's findings and conclusions of negligence, infidelity and lack of notice of the investment as confirmed by Special Term should also be overruled and the appellant's income commissions

should be allowed and the allowances and all other costs of the litigation should be borne by the trust estate.

MARTIN, P. J., and TOWNLEY, J., concur; DORE and COHN, JJ., dissent and vote to affirm.

Order, so far as appealed from, reversed, with costs and disbursements to the appellant payable out of the estate, in accordance with opinion. Settle order on notice.