Samuel H. Hofstadter, J.
In this proceeding for the settlement of an account of the trustees under a trust indenture, the petitioning trustees ask for the construction of an article of the indenture directing the payment of income to the grantor’s daughter, a secondary life beneficiary of one half of the trust. In addition, the guardian ad litem for infant remaindermen has filed objections to the account in which he challenges the charge against principal of income tases paid by the trustees on capital gains realized by them on the sale of a large number of shares of a given corporation which constituted the main asset of the trust. These questions must be resolved before the account, to which no other objection is raised, may be passed.
The trust indenture directs that on the death of the grantor’s wife, the primary life beneficiary, one half of the principal be paid to the grantor’s son, one of the accounting trustees. The *84 wife died on February 27,1957. As to the remaining half, article first of the indenture provides: ‘ ‘ The income from the remaining one-half of the trust estate or so much thereof as the trustees may deem proper, shall be paid to grantor’s daughter nina BAEKELAND ROLL, during the life of GEORGE W. BAEKELAND. Should the trustees pay to said nina baekeland roll less than the full net income of the said remaining one-half of the trust estate, as aforesaid, any such portion of the said income retained by the trustees shall be added to the principal of the remaining one-half of the trust estate which is to vest in the issue of nina baekeland roll on the termination of this trust, as hereinafter provided. Should grantor’s daughter nina baekeland roll, predecease grantor’s son george w. baekeland, the income which would have been paid to her had she remained alive shall be paid to her issue per stirpes and not per capita.”
The foregoing is the provision of which the trustees pray for judicial construction. They and the daughter, now Nina B. Wyman, urge that the instrument contains a direction for an unlawful accumulation of income, which should be excised and that, as a result, the entire income of one half of the trust is payable to the daughter as income beneficiary. ' The guardian, while taking a contrary position, nevertheless concludes also that the entire income “belongs” to the income beneficiary. His contention is that there is no invalid direction for accumulation but that the trustees have discretion to withhold part of the income and that on the death of the income beneficiary the income so withheld becomes part of her estate. He suggests that his wards, descendants of the income beneficiary, may ultimately benefit from the construction so advocated by him, either through the intestacy of the life beneficiary or through possible benefits under her will.
Since the indenture took effect on December 29, 1933, its provision for adding to principal any portion of the income retained by the trustees, insofar as a direction for accumulation, is unaffected by the 1959 amendments to section 16 of the Personal Property Law liberalizing the restrictions on such directions. In my opinion, the construction put forward by the trustees is correct. The indenture directs payment of income to the income beneficiary, not application of income for her benefit. Not alone is the distinction between the two forms of direction significant, but the indenture bears internal evidence of the grantor’s awareness of the distinction, for, in another portion of the same article of the indenture, he directs the trustees to “ pay to or apply for such infant’s support, maintenance *85 and education ” such part of the income as the trustees deem proper. We have here an explicit direction for payment. The cases in which a fiduciary is directed to apply income cited by the guardian, such as Matter of Littman (165 Misce. 285, 289-290), are inapposite. (See Matter of Walbridge, 178 Misc. 32, 36-37; Matter of Bank of New York and Fifth Ave. Bank, 99 N. Y. S. 2d 413, 415.)
Equally explicit and unambiguous is the direction that the retained portion of the income be added to principal. This is a clear direction for accumulation and, since not for the benefit of a minor and to terminate at or before the expiration of minority, it offends section 16 of the Personal Property Law (Morris v. Morris, 272 N. Y. 110). The unlawful direction for accumulation may be stricken without thwarting the grantor’s underlying purpose. There remains the valid disposition of the income in favor of his daughter, the income beneficiary, which may be given effect by ruling that the entire income is payable to her during the continuance of the secondary trust measured by the life of her brother George (Matter of Hoyt, 116 App. Div. 217, affd. 189 N. Y. 511). The instrument is so construed and the trustees are directed to pay the entire income to Nina B. Wyman.
The trustees paid out of the principal of the trust $365,493.01, income tax on the gain realized through the sale of stock. The principal of the half of the trust in which the infants represented by the guardian have contingent interests as remaindermen is affected by the foregoing payment to the extent of $183,115.04. The guardian objects to the depletion of the principal by this payment of $183,115.04 and insists the item is properly chargeable against income. For the result so advocated by him, the guardian relies on the parenthetical references to ‘1 income taxes upon capital profits ” in the following provision of article first of the trust indenture: “ to receive, hold, invest and from time to time to sell, exchange and otherwise dispose of and reinvest the same, or the proceeds thereof, and collect the rents, issues, income, revenues and profits therefrom arising * * * and after deducting all proper taxes, charges and expenses (including any income taxes upon capital profits not distributable as income hereunder) to pay or apply * * * the net income ”,
It is unnecessary to consider the merits of the guardian’s position as an original matter, for, in my opinion, the question is no longer open. It is foreclosed by a prior determination of this court. In 1952 a petition was filed in this court for the settlement of the accounts of the trustees of the present trust, *86 as well as of five other trusts created by the grantor on December 29, 1933 for various members of his family. In this petition a construction was prayed for of the very clause above quoted. The petition pointed out that the deduction from income of Federal income taxes on capital gains would deprive the income beneficiaries of all income for varying periods of years. It stated that the then market value of the equity securities in each of the trusts was greatly in excess of their cost basis for income tax purposes. Attached to the petition was a schedule showing the effect, upon income distributable to the primary life beneficiary of each of the trusts, were the Federal income tax on the gains resulting from the sale of 25% of the equity securities constituting the trust principal at the current market charged against the trust income. Included in this schedule was a detailed table of computations, showing the anticipated capital gains tax and the anticipated income of the fund after reinvestment of the proceeds of the contemplated sale. In the prayer for relief the petition requested construction as' to ‘ ‘ whether said trust agreements, regarded in their entirety, require the payment of capital gain taxes out of income or out of principal ” and the determination of two subsidiary questions involved in the determination of the basic question. All the adults interested in the trusts appeared in the proceeding through counsel representing them. The infant contingent remaindermen were represented by a court-appointed guardian ad litem who filed a lengthy memorandum opposing the construction sought by the petitioner. This guardian urged, as does the guardian on the present accounting, that the income tax on capital gains should be paid out of income, not principal. Because it was desired to make an immediate sale of stock, counsel requested the court to render an intermediate opinion on the construction of the clause relating to the payment of capital gains tax. In compliance with this request, Mr. Justice McNally on May 11,1953, rendered an opinion, since reported (124 N. Y. S. 2d 126), in which, on analysis of the provisions of the trust instruments and of a letter from the grantor to his son, written on December 24,1933, five days before the creation of the trusts, he construed article first of each of the trust instruments “ to require income taxes on capital gains to be charged against principal ”. This decision was implemented by a formal order of June 2, 1953 directing that all income taxes imposed as a result of the sale or other disposition of any of the principal of the trusts be charged against the principal account. The foregoing order was confirmed and incorporated in the later *87 final order of June 30, 1953, through the direction that the trustees hold and administer the trust property “ in accordance with the provisions of the trust indentures, with the intermediate order of this Court dated June 2, 1953, and with this final order. ’ ’
The construction so given by judicial determination necessarily rejected the contention of the guardian for the infants that the capital gains taxes were payable out of income. Not alone was no appeal taken by the guardian from this adverse determination, but in his final report he stated that he had concluded not to appeal and gave reasons for his opinion that an appeal would be futile.
In July, 1953, the trustees in obvious reliance on this court’s determination, embodied in the intermediate and final orders already mentioned, made the sales in respect of which the capital gains taxes here in question were imposed.
All adults interested in this trust are parties to this proceeding and were also parties to the prior proceeding. The infants then in being who were necessary parties were also before the court in that proceeding through their court-appointed guardian. Infants so represented are just as much bound by the final order therein as persons of full age (Matter of Hawley, 100 N. Y. 206; Grossman v. Kass, 124 N. Y. S. 2d 416). By virtue of subdivision (a) of section 1311 of the Civil Practice Act, infants of the same class as those in being and made parties in the prior proceeding are bound equally by the determination therein. The infants represented by guardian in the former proceeding were grandchildren of Mrs. Wyman, the secondary income beneficiary; the infants born since that proceeding and now parties herein are also grandchildren of Mrs. Wyman. Since the trust remainder is limited to her grandchildren per stirpes, all of whom derive their interest through their parents, the representation of the then living grandchildren is sufficient to bind those born thereafter (Tonnele v. Wetmore, 195 N. Y. 436, 446).
The construction issue having been directly tendered and determined in 1953, the parties are now concluded by that determination under the doctrine of res judicata (Tonnele v. Wetmore, supra; Thorn v. De Breteuil, 179 N. Y. 64; Matter of Ferris, 276 App. Div. 990).
The guardian seeks to escape the binding effect of the 1953 construction in reliance on the authorities which limit the conclusiveness of an accounting decree to the items in the account settled by it (Rudd v. Cornell, 171 N. Y. 114; Megrue v. *88 Megrue, 231 App. Div. 245). He argues further that the amendment to section 145 of the Surrogate’s Court Act, greatly
restricting, if not entirely abolishing, the foregoing limitation on the finality of an accounting decree, is confined to testamentary instruments and does not apply to an inter vivos trust. The trustees and the income beneficiary urge to the contrary that the limitation is excluded from a proceeding under article 79 of the Civil Practice Act and lean heavily on section 1311 of the act. There is no occasion to resolve these conflicting contentions. Even were the limitation on the doctrine of res judicata invoked by the guardian deemed otherwise operative in a proceeding under article 79, it could in no event have a proper place here. The 1953 determination, embodied in the intermediate and final orders already mem tioned, was far more than the mere approval of an account. The parties submitted the question whether the capital gains taxes were payable out of income or principal to the court, to obtain an authoritative ruling as a guide for future action. The issue was fully explored in a genuine contest participated in by all those in interest. The court thereupon made its determination and, as already stated, almost immediately thereafter and in reliance thereon, a large block of stock in the trust was sold. Now to treat the court’s former action as a nullity, as the guardian would have it do, would in effect be saying that the court and the parties were then wasting their time and engaging in a futility. The court is unwilling so to rule. Were the guardian’s view adopted, the principle and policy of res judicata would be flouted. The tendency today is to expand rather than to narrow the rule that when an issue has been litigated and determined, the determination concludes the parties in later litigation (Israel v. Wood Dolson Co. 1 N Y 2d 116). I hold, therefore, that the 1953 determination has foreclosed the issue. Hence, there is no need to re-examine the question or to advert to the weighty reasons given in the 1953 opinion for the result then reached. The parties now again advance the same grounds; as noted above, the guardian ad litem at that time manifested his final acquiescence in them by deliberately not taking an appeal.
Accordingly, I overrule the objection of the present guardian ad litem to the payment of the capital gains taxes out of the principal of the trust. Proceed accordingly.