In the Matter of the Accounting of the BANK OF NEW YORK, as Trustee under Indentures of Trust made by LOUISE P. COWLES and by RUSSEL A. COWLES, and as Trustee under Article Sixth of the Will of ALFRED A. COWLES, Deceased, Appellant. ERNEST F. COWLES et al., Appellants; ELIZABETH C. HARRIS et al., Respondents.

First Department, January 7, 1965.

*Thomas B. Fenlon* of counsel (*Richard S. Emmet, Thomas F. Noone* and *Israel Machtey* with him on the brief; *Emmet, Marvin & Martin,* attorneys for Bank of New York, appellant; *Israel Machtey,* attorney for Ernest F. Cowles and others, appellants), for appellants.

*John M. Foley* of counsel (*Richard G. Hickey* with him on the brief), as guardian ad litem for infants, respondent.

*Breed, Abbott & Morgan,* attorneys for Elizabeth C. Harris and another, respondents.

EAGER, J. This proceeding, brought under article 79 of the Civil Practice Act, was instituted in 1955 by the Bank of New York for a judicial settlement of its accounts as of March 3, 1955, as trustee of certain *inter vivos* trusts created by Louise P. Cowles and Russel A. Cowles, and for judicial settlement of its accounts as of March 3, 1955 as trustee under a testamentary trust created by the will of Alfred A. Cowles, deceased.

Objections, as hereinafter mentioned, were interposed by certain allegedly interested remaindermen to accounts of the trustee in the said *inter vivos* trusts. Eventually, the proceeding was referred to a Referee to hear and report. The Referee, on August 23, 1963, filed his report sustaining the objections. Thereon final judgment was rendered at Special Term sustaining the objections, surcharging the trustee for substantial sums for loss occasioned by reason of the investments in the Ansonia Clock Company in the Louise P. Cowles trust, surcharging the trustee also for substantial losses on the investments in the Ansonia Clock Company and Cyclops Steel Company in the Russel A. Cowles trust, and denying commissions to the trustee. The petitioner trustee, the Bank of New York, and certain trust beneficiaries, who have approved of its accounts as trustee, appeal from this judgment. Also, there is an appeal from an order denying a motion to drop Clifton R. Hipkins and David D. Hipkins (contingent remaindermen) as parties to the proceedings and to remove their guardian ad litem from further participation in the proceedings.

The two subject *inter vivos* trusts are virtually identical. One was created by the indenture of Louise P. Cowles on January 12, 1917, naming her husband, Russel, as the primary life beneficiary, and the other by the indenture of Russel A. Cowles on January 19, 1917, naming his wife, Louise, as the primary life beneficiary. By virtue of the terms of each indenture, Ernest and Francis, the then living and only children of Louise and Russel, in the normal course of events were each to be secondary

life beneficiaries of a half share in each of the trusts, each with power of appointment for his half share, and there were provisions for payment of the shares to their respective distributees on failure of exercise of the power of appointment.

Louise P. Cowles died in 1925 and Russel A. Cowles died in 1953. Their son, Ernest, a secondary life beneficiary, is still living but Francis, the other son and the other secondary life beneficiary died in 1952.

PRESENT STATUS OF LOUISE P. COWLES<br>TRUST AND OF BENEFICIAL INTERESTS THEREIN

On the death in 1953 of Russel A. Cowles, who was the primary life beneficiary of this trust, the trust estate was divisible into two shares. One of such shares was set aside for the son, Ernest, who was then and still is living, to be held in trust for him for life, with power of appointment in him. Ernest has three children living, namely, Louise C. Hipkins, Edward R. Cowles and Stephen A. Cowles, who are the presumptive takers of the remainder in case Ernest does not exercise his power of appointment. Ernest and all of his said children have in effect approved the trustee's accounting with respect to this half of the Louise P. Cowles trust. The only objectants with respect to such accounting are two infant children of Louise C. Hipkins (hereinafter referred to as the Hipkins infants), who are represented by their guardian ad litem, John M. Foley.

The secondary life beneficiary of the other half share of the Louise P. Cowles trust would have been the son, Francis, but he died in 1952, predeceasing the primary life beneficiary, Russel. We have concluded, as hereinafter pointed out, that this share vested in Francis' issue, namely, Elizabeth Cowles Harris and Marcia Cowles Platt, and they are objectants to the trustee's account.

PRESENT STATUS OF RUSSEL A. COWLES<br>TRUST AND OF BENEFICIAL INTERESTS THEREIN

On the death in 1925 of the primary life beneficiary, Louise P. Cowles, one half of the trust estate was set aside to be held in trust for the benefit of Ernest for life, with power of appointment in him, and the other half was set aside for the son, Francis, with power of appointment in him. Ernest is still living, and he has, as aforenoted, three children who are also living. Ernest and his children in effect approve of the accounting of the trustee with respect to this half of the Russel A. Cowles trust. The only objectants here are the said Hipkins infants, the grandchildren of Ernest.

Francis, the secondary life beneficiary of a half share in this trust, died in 1952, and thereupon the trust ended as to this half share. The trustee heretofore accounted for the said share and, there having been no objections filed, a final decree was rendered in the Supreme Court on June 24, 1953, settling the trustee's accounts. Pursuant to such decree, said half share has been distributed to the children of Francis. Therefore, this one half of the Russel A. Cowles trust is not properly involved in this proceeding or on this appeal.

### STATUS OF HIPKINS INFANTS AS PARTIES AND AS OBJECTANTS

Clifton R. and David D. Hipkins (the Hipkins infants) are the children of Louise P. Hipkins. She is a daughter of Ernest, who became a secondary life beneficiary of a half share in both the Louise P. Cowles and Russel A. Cowles trusts. The Hipkins infants are only remotely interested in a remainder in the particular half shares of the two trusts. Ernest is given a power of appointment with respect to such shares, and should he fail to exercise the power of appointment, it is provided that his shares would vest in his heirs at law and next of kin. Accordingly, the Hipkins infants would not take under the trust indentures if Ernest exercised his power of appointment or, having failed to exercise the same, if Louise P. Hipkins, their mother, now age 36, survived Ernest, now about 59 years of age.

If Ernest had died immediately prior to the institution of this proceeding without exercising the power of appointment, Louise P. Hipkins would take instead of her children. Thus, upon her being made a party to the accounting proceeding, her children, the said Hipkins infants, would not be necessary parties. They would be considered as being properly and sufficiently represented in the proceedings by their mother as the taker of the remainder interest in the event that the trust terminated immediately prior to the commencement of the proceeding. (See Civ. Prac. Act, § 1311, now CPLR 7703.)

The Hipkins infants were brought in and made parties to the proceeding by the petitioner on allegations that they were among those persons "interested in the trusts * * * who are or may be required by Article 79 of the Civil Practice Act to be made parties to this proceeding in order that the final order herein shall be binding and conclusive on all persons who may be in being and on all persons who may be hereafter born who are or may be interested in the subject matter of this proceeding and the relief demanded in this petition and who have or may have any interest in said trusts or in any one or more of said

trusts ''. On the basis of these allegations, these infants were properly joined as parties.

The provisions of the statute (Civ. Prac. Act, § 1311, now CPLR 7703) are permissive and do not preclude the joining as parties to an accounting proceeding of all contingent remaindermen including those who are only remotely interested and who, under the terms of the statute, are not necessary parties. A contingent remainderman, though not a necessary party, may very well be a proper party to the proceeding. The appellants, in their reply brief, concede that the Hipkins infants were in the first instance properly made parties to the proceeding here. Inasmuch as they were infants, it follows that a guardian ad litem was properly designated to appear for and represent them and that he was entitled to interpose an answer and objections to the trustee's accounts in their behalf. The issues raised thereby were included in the reference to hear and report but, upon commencement of the reference, counsel for the trustee moved to dismiss the objections upon the ground that the infants' interests were '' only remotely contingent and they are not necessary parties ''. The motion was denied by the Referee for alleged lack of power with respect to such a motion. Then, following the filing by the Referee of his report sustaining objections to the trustee's accounts, including the objections filed in behalf of the infants, and on October 4, 1963, the attorneys for the trustee and the attorney for Ernest and two of his children, moved for an order dropping the infants as parties and removing their guardian ad litem from any further participation in the proceeding. The order denying such motion is here on appeal.

Parties to an action or special proceeding '' may be   *   *   * dropped by the court, on motion of any party   *   *   *   at any stage of the action and upon such terms as may be just ''. (CPLR 1003.) But these provisions of CPLR are also permissive. After an action or special proceeding has been instituted, and a party defendant or respondent has appeared and properly presented issues affecting his rights, the plaintiff or petitioner no longer has an absolute right to drop the party. An application then made to drop the party is generally equivalent to a motion to discontiue the action or proceeding as against him. If the defendant or respondent has a valid interest in having the action or proceeding continue for a determination of issues presented by him, he may resist a proposed discontinuance as to him. Thereupon, the matter rests in the sound discretion of the court which may protect the party's interests by refusing the discontinuance. (See CPLR 3217; 6 Carmody-

Wait, New York Practice, Voluntary Discontinuance, § 13, p. 62; *Matter of Lasak,* 131 N. Y. 624.)

We agree that, in a given case, a party with but a remote interest in the trust estate, although properly in the first instance made a party to the proceeding, may be dropped where his continued presence as a party is not necessary to a fully effective decree. Material factors then are whether or not the continuance of the proceeding as against the party will unduly delay the proceedings and whether or not such continuance will tend to burden the estate with unjustified expense. Under the circumstances and at the stage of the proceedings here, however, the continued presence of the Hipkins infants will not materially add to any delay or expense in the concluding of the litigation.

These infant parties, represented by their guardian ad litem, have fully participated in the proceeding as objectants to the trustee's accounts to and including the entry of the decree upon the accounting. The issues with respect to their objections were fully litigated and have been determined on the merits at Special Term and, on basis thereof, a surcharge has been directed against the petitioning trustee. The infants are now in this court defending on the merits the decree rendered in their favor. To now strike them as parties would deprive them of a full opportunity to be heard with respect to the provisions of the decree which materially augment their possible interest in a remainder in the trust estate. Furthermore, inasmuch as their mother does not object to the accounting as filed by the trustee, if we drop them as parties, there would be no one appearing in the proceeding who would properly represent their interest in upholding the Special Term decree.

We have concluded that, within the framework of the pleadings, the Hipkins infants were proper parties and that, at this stage of the proceedings, the motion to drop them should be denied.

### RIGHTS AND STATUS HERE OF OBJECTANTS
### HARRIS AND PLATT

Elizabeth Cowles Harris and Marcia Cowles Platt, as heretofore noted, are the only children of Francis Cowles who, as a child of Louise P. and Russel A. Cowles, was designated as a secondary life income beneficiary of a half share in the Louise P. Cowles trust. Francis, however, predeceased Russel, the primary life beneficiary of the entire trust. Upon Russel's death in 1953, Harris and Platt claimed to be entitled to take the remainder in the half share of the trust which would have been set aside in trust for Francis had he survived Russel.

The trust indenture provided that the trustee should hold the property in trust during the life of Russel for his benefit and upon his death the trustee was directed: "to divide the property constituting the Trust Estate into as many equal shares as there shall be children of the aforesaid Louise P. Cowles and Russel A. Cowles, the issue of a deceased child representing the share that the parent would have represented if living, and to hold one of such shares or portions in Trust for the benefit of each of such children who shall be living at the date of making this Agreement, and also at the date of the death of the aforesaid Russel A. Cowles  *  *  *  to pay over the net income derived from each of such shares so held in Trust to the child for whom such share shall be held in Trust, during the term of his or her natural life  *  *  *.  Upon the death of the child for whom such share shall be held in Trust, the Trust with respect to that share shall terminate and cease absolutely, and the principal of the share so held in Trust upon its termination shall be assigned, transferred and paid over in equal shares to such person or persons and in such amount or amounts as the child for whom such share was held in Trust shall appoint  *  *  *  and if for any reason such child shall fail to execute or exercise such Power of Appointment  *  *  *  then the principal of the said share so held in Trust shall upon the termination of the Trust be  *  *  *  paid over to the heirs-at-law and next-of-kin of such child  *  *  *.  In case at the time of the death of Russel A. Cowles there shall be living a child of the aforesaid Louise P. Cowles and Russel A. Cowles, born after the date of this Indenture, then the Trustee shall assign, transfer and pay over to such child absolutely his or her share of the Capital of the Trust Estate, the same to be held in Trust, however, by the party of the second part hereto, as Trustee, during the minority of such child  *  *  *.  In case at the time of the death of Russel A. Cowles there shall be living the issue of any child who shall have predeceased the said Russel A. Cowles, then the Trustee shall assign, transfer and pay over in equal shares to the issue of such deceased child the share such child would have taken if living, the same to be held in Trust, however, by the party of the second part hereto, as Trustee, during the minority or minorities of such issue, and the net issues, income and profits to be applied towards the support, maintenance and education of such issue during his or her minority or their minorities."

Harris and Platt, as issue of the deceased child Francis, claim that the final sentence, quoted above, applies to entitle them

to take the remainder interest. On the other hand, the appellants contend that said sentence does not apply to the contingency which actually occurred, namely, where Francis, a child of Louise and Russel, predeceased the primary life beneficiary, Russel. The appellants argue that the gift to the issue of a predeceased child of "the share such child would have taken if living" gives nothing to Harris and Platt since their father, Francis, would not have "taken" any "share" had he been living but would have held only a beneficial life interest with power of appointment. Then, to give the said final sentence a purpose, the appellants contend that, construed in connection with the immediately preceding sentence containing provisions for any child born after the date of the indenture, due effect may be given to the word "taken" by applying the final sentence to provide solely for the issue of an afterborn child who predeceased Russel; and thereby, such a child would take "the share such child would have taken if living", i.e., a "share of the Capital of the Trust Estate".

In order to adopt the construction contended for by appellants, one would in effect be required to write the word "afterborn" into the said final sentence so that it would read as a provision in favor of "the issue of any [*afterborn*] child who shall have predeceased the said Russel". Furthermore, such a construction requires us to limit the meaning of the word "taken" to its strict literal sense, namely, as a reference solely to an absolute taking of principal rather than also including a taking in the sense of a holding of the beneficial interest in a share for life with power of appointment. Such a construction would represent not only a narrow and strained interpretation of the particular sentence but also would tend to defeat the obvious intention of the settlor for equality among her stirpes.

The ultimate objective in the construction of an *inter vivos* trust indenture is to ascertain and give effect to the settlor's intention which is to be sought from a reading of all of his words in the light of surrounding circumstances. (See *Matter of Fields*, 302 N. Y. 262; *First Nat. Bank & Trust Co.* v. *Palmer*, 261 N. Y. 13; *Matter of Day*, 10 A D 2d 220.) Here, the pertinent indenture provisions, considered as a whole, give clear indication that the settlor intended that the issue of all her children should eventually receive a share in the trust estate. There was, as noted, the express direction that, on the death of Russel, the trustee should "divide the property constituting the Trust Estate into as many equal shares as there shall be children of the aforesaid Louise P. Cowles and Russel A.

Cowles, the issue of a deceased child representing the share that the parent would have represented if living ''. Having thus created an equal '' share '' for the issue of each of her children who might predecease the life tenant, we may assume, absent a contrary disposition, that the settlor intended that the issue of each such child receive the share. It is unthinkable that the settlor would create a '' share '' for the issue of a deceased child which would never go to such issue. Certainly, too, there was no reason for her to discriminate against the issue of children who were living at the date of the indenture (whom she knew and doubtless loved) in favor of the issue of children as yet unborn.

Finally, there is a presumption that the settlor intended to dispose of all remainder interests, including such interests created where a then living child should predecease the primary life beneficiary. '' The likelihood that a settlor intended to make effective provision for all contingencies and did not intend by mere omission to leave any interest undisposed of is entitled to some weight.'' (See 90 C. J. S., Trusts, § 162, p. 31.) It is to be assumed here that the settlor intended to effectively dispose of the remainder interest under any and all contingencies and such intent, obvious here from a reading of the trust provisions, would be frustrated if the subject remainder interest was held to be undisposed of and remain in her estate to pass to her distributees or under her will. (Cf. Restatement, Property, § 243, subd. [a], *Comment c* [1963].)

We conclude that it was plainly the settlor's intention that the Francis half share in the Louise P. Cowles trust should pass to the respondents Harris and Platt, and further conclude that the wording of the indenture, reasonably construed, has this effect. The judgment appealed from should be affirmed in this respect. Accordingly, these respondents had a standing to interpose objections to the trustee's account and the same are required to be considered on the merits.

OBJECTIONS OF HARRIS AND PLATT TO TRUSTEE'S ACCOUNTS, AND SURCHARGES THEREON, CONSIDERED ON THE MERITS

The objections of Harris and Platt to the trustee's accounts in the Louise P. Cowles trust are directed to the investments by the trustee, at the instance of Russel A. Cowles (life beneficiary) in the years 1917 to 1921, of a substantial portion of the trust fund in common stock of Ansonia Clock Company, the retention for a number of years of the Ansonia stock while it was declining in value, the converting and exchanging in 1928 of the Ansonia stock for stock of Tork Clocks, Inc., and the

retention by the trustee of the Tork stock for a number of years, all with the result that the amount originally invested in the Ansonia stock was a total loss. The objections are grounded principally upon allegations that the trustee, when making the investments, acted without independent judgment solely at the direction and in furtherance of the personal interests of Russel A. Cowles, the primary life beneficiary.

Of crucial significance are the special provisions of the indenture relating to the investment powers of the trustee. It was provided that the trustee "may sell or change the same [the securities and investments originally received by it] only with the consent of Russel A. Cowles during his lifetime", and it was further provided: "The party of the second part [the trustee] may invest and reinvest the proceeds of such sales in such other securities as are legal investments for Trust Funds and in such other securities as may be approved in writing by the same persons who are required to give consents to selling or changing the securities and investments constituting the Principal of the Trust hereby created, and under the same conditions. No sale, change, investment or reinvestment, as the case may be, shall be made unless the party of the second part hereto also approves of the same. When any such sales, changes, investments or reinvestments are so made the party of the second part hereto shall not be responsible for any loss resulting from such sales, changes, investments or reinvestments, as the case may be ".

There was full compliance with the requirement that Russel consent to the sale of certain securities held by the trustee to provide available funds and with the requirement that he approve of the investment of the funds in the particular stocks. The trustee was required to " also approve(s) " of any sale or reinvestment. Although the record lacks proof of the details of the action on the part of the trustee in the matter of the approval of all pertinent transactions, such lack of proof is understandable due to the long lapse of time since the questioned transactions. In order to complete the transactions, however, it was necessary in all cases for the trustee to take affirmative action in the matter of sale and delivery of the trust held securities to provide available funds. It affirmatively appears that it did take the necessary steps in this connection for the specific purpose of effecting the Ansonia stock purchases. This establishes prima facie and sufficiently its " also approv(al) " of the Ansonia investments.

Since the provisions of the indenture for the Ansonia investments were fully complied with, the surcharge of the trustee may

not be sustained on the theory that it had abdicated or delegated its fiduciary responsibilities by honoring Russel's request to purchase the Ansonia stock. That the Ansonia Clock Company was a close corporation, that Russel was a substantial stockholder and a vice-president thereof, that he sought a controlling interest therein, and that the trustee made the stock purchases following Russel's suggestions or requests, do not give rise to an inference that the trustee failed in its duty to exercise independent judgment in the matter of the approval of the purchases. So far as it appears, the suitability of the Ansonia stock as an investment was fully considered by the trustee. In fact, on one occasion in December, 1917, it appears that the president of the trustee wrote Russel that the trustee "would consider the Ansonia Clock Company shares a desirable investment".

Disregarding for the moment the effect of the exculpatory clause (final sentence in the above-quoted provisions), the extent of the duty of the trustee in the matter of its approval of common and preferred stock investments was to act in good faith and to exercise such care and diligence as prudent men of discretion and intelligence would employ in like matters in their own affairs. (See *Costello* v. *Costello,* 209 N. Y. 252, 261; *Matter of Clark,* 257 N. Y. 132, 136; *Matter of Bloch,* 189 Misc. 942, 945 [SHIENTAG, J.].) It appears that the trustee did act in good faith and that the Ansonia stock was a good businessman's investment rather than a speculative venture. In 1917, Ansonia was a long-established company with a very profitable record. It owned its own plant and equipment and had no substantial indebtedness. It had acquired a surplus in excess of its capitalization. It had a record of paying substantial dividends, and dividend payments continued to and including the year 1920. In all of its purchases of the Ansonia stock, the trustee paid less than the book value of the shares. During the period from 1917 to 1921, during which the investments were made, the company appeared to represent a profitable operation, and the trustee had no reason to believe that the company would not continue to operate profitably.

Certainly, the trustee here was chargeable only with what it knew and what, in the exercise of ordinary care and prudence, it ought to have known. (*Matter of Dalsimer,* 251 App. Div. 385, 388, 389, affd. 277 N. Y. 717.) What it knew and what it ought to have known about the Ansonia company and stock would show that the investments, duly approved by Russel, were proper and prudent from a fiduciary standpoint, and any finding to the contrary is against the weight of the evidence.

Furthermore, on the record, liability on the part of the trustee for surcharge may not be predicated on the exchange by it of the Ansonia stock into the stock of Tork Clocks, Inc., nor on the basis that it improperly retained the Ansonia stock and later the Tork stock for several years until the investment became entirely worthless. It does not satisfactorily appear that at the time of the exchange, the Tork stock was of lesser value and investment quality than the Ansonia stock. For all that appears, from a good business judgment standpoint, the exchange was advisable.

The objectants, in their presentation, have proceeded on the theory that the Ansonia investments should not have been made in the first place and, on basis thereof, the trustee has been surcharged for the total amount of the investments. The objectants offered no evidence on the basis of their claim that the Ansonia or Tork stock should have been sold at a particular time or within a reasonable time after a particular date. Neither the Referee nor Special Term has made any findings as to a time, during the period of retention, when the trustee in the exercise of due care should have sold the securities, nor as to the value thereof or price obtainable at any such time.

These particular investments, like any stock investment, might increase or decrease in value. The trustee had a right to have confidence in the long-range prospects of a business which had once prospered, and it is immaterial that these investments, like all stockholdings, were subject to unforeseeable business hazards or reverses in the corporate affairs. The trustee could not be expected to look into the future and to foresee that the stock would continually decline in value without making a comeback. "The law does not, of course, demand prescience of trustees; they are not required to foresee the future of investments in this or that particular enterprise". (*Matter of Hubbell*, 302 N. Y. 246, 257. See, also, *Matter of Clark*, 257 N. Y. 132, 140.) Except by hindsight, one cannot determine whether it was "part of wisdom to sell the stocks at what each month may well have seemed bottom prices." (*Matter of Clark, supra*, p. 139.) "A wisdom developed after an event and having it and its consequences as a source is a standard no man should be judged by". (*Costello* v. *Costello, supra*, p. 262.)

The purport of the evidence here is merely that the trustee was mistaken in its judgment concerning the future prospects of the Ansonia and Tork investments and the desirability of the retention of the shares. But fallibility in matters of business judgment is not a standard for liability. The surcharge here is

not justified because the trustee's "judgment turned out wrong". (HOLMES, C. J., in *Green* v. *Crapo,* 181 Mass. 55, 58.)

Finally, under the circumstances, the exculpatory clause of the trust indenture, by its express terms, clearly has the effect of relieving the trustee from any responsibility for the loss resulting from the Ansonia and Tork investments. That clause reads (final sentence in provisions quoted, *supra*), "[w]hen any such sales, changes, investments or reinvestments are so made the party of the second part [the trustee] hereto shall not be responsible for any loss resulting from such sales, changes, investments or reinvestments, as the case may be". The conditions for the applicability of the clause were the consent by Russel to the sale by the trustee of securities originally received by it, the approval by Russel of the investment of the proceeds in various purchases of the Ansonia stock, his later approval of the exchange for Tork stock, and the "also" approval by the trustee of all transactions. It appears that all of these conditions were fully met in connection with all the Ansonia purchases and the exchange into the Tork stock. Therefore, the exculpatory clause relieves the trustee from liability for any surcharge in the absence of a showing of willful negligence, self-dealing or bad faith on its part. (*Matter of City Bank Farmers Trust Co.* [*McGovern-Crane*], 270 App. Div. 572, affd. 296 N. Y. 662; see, also, *Crabb* v. *Young,* 92 N. Y. 56, 65; 1 Restatement, Trusts 2d, § 222, p. 516 [1959].) In light of the facts as they appear in the record and were heretofore discussed, there is no basis for a finding of willful negligence, self-dealing or bad faith on the part of the trustee in any of the questioned transactions. (Cf. *Central Hanover Bank & Trust Co.* v. *Russell,* 290 N. Y. 593.)

We conclude that the objections of Harris and Platt should be dismissed.

### THE OBJECTIONS OF THE HIPKINS INFANTS, THEIR STANDING TO INTERPOSE THE OBJECTIONS, AND CONSIDERATION OF THE MERITS THEREOF

These objections, as heretofore noted, are interposed with respect to the accounting concerning the Ernest half shares in both the Louise P. Cowles and Russel A. Cowles trusts. The objections allege improper investments of trust funds in the common stock of the Ansonia Clock Company and in the preferred stock of the Cyclops Steel Company.

The secondary life beneficiary, Ernest, had a general power of appointment of the said trust half shares in which the Hipkins infants had a contingent remainder. By formal document,

executed in 1940, Ernest approved the trustee's actions and investments which are the basis of these objections now. Furthermore, Ernest has appeared in this proceeding, approved the accounts as filed, and is, in fact, an appellant on this appeal seeking to reverse the decree of Special Term sustaining the objections and directing the surcharges.

Under the circumstances, there is sound authority that the Hipkins infants are precluded from challenging the trustee's accounts which had been and are fully approved by Ernest. The applicable rule is stated in the Restatement of Trusts 2d (vol. 1, § 216, subd. [1], par. *h,* p. 503 [1959]) as follows: "*h. Consent by a beneficiary having a general power of appointment.* Where a beneficiary has a general power of appointment, even though it is a power to appoint by will alone, his consent to a breach of trust precludes the persons to whom he makes an appointment from holding the trustee liable for the breach of trust. So also, even if the beneficiary who has a general power of appointment fails to exercise the power, the persons taking in default of appointment are precluded by his consent from holding the trustee liable."

Without regard to the application of this rule, however, the objections of the Hipkins infants should have been dismissed on the merits. The investments, which were the subject of these objections, do not appear to have been improperly or imprudently made, nor does it appear that they were imprudently retained after they were made. In any event, the exculpatory clause in the trust indentures, hereinbefore referred to, is fully effective to release the trustee from liability. Everything that we have said heretofore as the basis for the dismissal of the Harris and Platt objections applies fully to the objections of the Hipkins infants with reference to the Ansonia and Cyclops investments.

### ALFRED A. COWLES TESTAMENTARY TRUST

The account of the trustee in the matter of the Alfred A. Cowles testamentary trust should be approved as filed, but the judgment appealed from should be modified to direct that the trustee retain as income commissions the sum of $32.60 instead of the sum of $1,586.72. According to the account as filed, the trustee has already been paid the sum of $1,554.12 on account of income commissions, leaving only a balance of $32.60 to be paid.

Furthermore, the provision in said judgment for the payment of $500 to John M. Foley for his services as guardian should be stricken. The infants for whom he appeared were

not interested in any way in the Alfred Cowles trust estate or in the accounting with respect thereto. Under the circumstances, an allowance payable to him out of the funds of this trust was not justified. (See *Matter of Holden,* 126 N. Y. 589, 596.)

CONCLUSION

The findings of fact and conclusions of the Referee, and at Special Term, are reversed and vacated insofar as they are inconsistent herewith, and new findings of fact are made as hereinbefore indicated.

In view of the conclusions we have reached, the accounts of the trustee in the several trusts, as filed, should be in all respects approved and judicially settled, and the trustee should be allowed its proper income and principal commissions. All parties appearing should be allowed costs and the same together with the expenses of the reference should be payable out of the respective trusts properly chargeable with the same. It is to be noted, however, that costs and allowances, including expenses of the reference, will be required to be fixed in modest amounts with due regard to the limited extent and value of the trust assets.

The trustee should forthwith prepare and file supplemental accounts bringing its accounts up to date in the several trusts, and proceed for the settlement of the same.

The judgment appealed from should be modified, on the law and the facts, to strike and delete all provisions therein, except the provisions judicially settling and allowing the trustee's accounts as filed in the Alfred A. Cowles trust, to provide that the objections filed by all parties are dismissed and that the accounts, as filed by the trustee in the Louise P. Cowles and Russel A. Cowles trusts should be approved and judicially settled as filed, to provide that the trustee retain as income commissions in the Alfred A. Cowles trust the sum of $32.60 instead of the sum of $1,586.72, as directed in said judgment, to strike the allowance and payment of $500 from the Alfred A. Cowles trust to John M. Foley for services as guardian, and the judgment should otherwise be affirmed, with costs and disbursements on the appeal to all parties filing briefs to be payable out of the trust estates, with the exception that the guardian ad litem shall not receive any costs or allowances payable from the Alfred A. Cowles trust estate.

Settle order on notice.

STEUER, J. (dissenting). I dissent only from so much of the determination herein which affirms the denial of the application

to drop Clifton R. and David D. Hipkins as parties and to remove John M. Foley, guardian ad litem, from further participation in the proceedings insofar as he represents those infants. Ernest Cowles, the life beneficiary of half of the trusts, has three children — Louise Hipkins, Edward R. Cowles and Stephen A. Cowles. Mrs. Hipkins has two children, the infants above named. At the beginning of the proceeding, Edward and Stephen were minors and Mr. Foley was appointed guardian ad litem for them as well as the Hipkins children. As such, he filed objections to the accounting. During the proceedings, Edward and Stephen came of age, disavowed the action previously taken on their behalf, and asked for approval of the accounts. Mrs. Hipkins never objected to the accounts.

The provisions of the two trusts in question have been amply set out in the majority opinion. The question presented by this branch of the appeal is whether the Hipkins children can be heard to object to the trustee's account. These infants are not entitled to participate in the estate unless their mother dies during the lifetime of her father, their grandfather, and unless the grandfather fails to exercsie a power of appointment. Such infants are not necessary parties (CPLR 7703) and were not at the time of institution of these proceedings (Civ. Prac. Act, § 1311). It is argued that, as the statute does not forbid their appearance, they are proper parties and hence may be heard. It should be conceded that decisions to the effect that an unrepresented infant who was not a necessary party is bound by the decree (*Matter of Baekeland,* 26 Misc 2d 82; *Matter of Blake,* 208 Misc. 22) are not conclusive against the contention. Certainly, if the interest of the infant is adverse to that of the ancestor from whom he takes, the statute was not intended to dispense with his presence (*Matter of Lachlan,* 24 Misc 2d 323, 325).

At this point it would be well to treat of the guardian's contention that the interest of his wards is adverse to the interest of their mother. This claim rests solely on the ground that the mother does not wish to assert the claim against the trustee while the guardian, as representative of the infants, does. This is not an adverse interest, it is merely a divergent view. The interest of the infants is identical with that of the ancestor. In the absence of appointment, it is to take the same share of the trust, depending on which is the survivor, and is subject to the same possibility of defeasance, namely, exercise of the power of appointment by the life tenant. There is no contingency and no construction of the instrument whereby the issue will take if the ancestor was not so entitled, or any dis-

tinction in the shares to be taken. It is claimed that the mother's failure to object could result in a diminution of the size of the share which the infants would take if they come into the gift by succession. But such inaction would also reduce the mother's share were she to be the donee. So the interest remains the same. It would be different only if the failure to object resulted in some benefit to the ancestor, which benefit was not reflected in the trust estate.

I return now to the distinction between a necessary and a proper party in the guardian's argument. The statute is phrased in terms of which persons must be made parties in order to have a binding decree. It is inconceivable that, in so enacting, the Legislature intended that any person, no matter how remote his interest or how well that interest is protected, could appear and object to the account. It is submitted that a proper interpretation of the legislative intent is that representation is limited to necessary parties but that the rule is couched in its terms so as not to preclude the appearance of one otherwise not qualified whose interest is adverse or whose appearance, in the sound discretion of the court, would be advisable.

The particular case appears to be one well-illustrative of the merits of such an interpretation. All of the adult members of the Ernest Cowles family, including the one through whom these infants will take, if they take at all, are opposed to the filing of these objections. Doubtless they regard it as ill-advised and a substantial drain on a not particularly substantial estate. The other two wards of the guardian from this family disavowed the action of the guardian as soon as they were in a position to do so. The person presumably most interested in the welfare of these infants, and the representative of the class to which they might succeed, has taken a like position. These circumstances demonstrate the feasibility of not countenancing an appearance for these infants.

BOTEIN, P. J., RABIN and McNALLY, JJ., concur with EAGER, J.; STEUER, J., dissents in part in opinion.

Judgment modified, on the law and the facts, to strike and delete all provisions therein, except the provisions judicially settling and allowing the trustee's accounts as filed in the Alfred A. Cowles trust, to provide that the objections filed by all parties are dismissed and that the accounts, as filed by the trustee in the Louise P. Cowles and Russel A. Cowles trusts should be approved and judicially settled as filed, to provide that the trustee retain as income commissions in the Alfred A.

Cowles trust the sum of $32.60 instead of the sum of $1,586.72, as directed in said judgment, to strike the allowance and payment of $500 from the Alfred A. Cowles trust to John M. Foley for services as guardian, and the judgment as so modified, affirmed, with $50 costs and disbursements to all parties filing briefs payable out of the trust estates, with the exception that the guardian ad litem shall not receive any costs or allowances payable from the Alfred A. Cowles trust estate. Settle order on notice.