In the Matter of CHASE MANHATTAN BANK (Successor by Merger to The Chase Lincoln First Bank, N.A., Successor in Interest to Lincoln First Bank of Rochester, Formerly Known as Lincoln Rochester Trust Company), as Trustee of the Trust for the Benefit of Blanche D. Hunter, Deceased, and Another, Under "Fifth" of the Will of Charles G. Dumont, Deceased, Appellant-Respondent. MARGARET HUNTER et al., Respondents-Appellants; ELIOT SPITZER, as Attorney General of the State of New York, Respondent. [809 NYS2d 360]—

Appeal and cross appeal from a judgment of the Surrogate's Court, Monroe County (Edmund A. Calvaruso, S.), entered August 10, 2004. The judgment, insofar as appealed from, granted the objections to the superseding account and ordered that objectants recover of petitioner a surcharge plus interest and commissions in the amount of $24,076,937.31 based upon a determination that petitioner should have divested itself of a concentration of Eastman Kodak Company stock on or before January 31, 1974.

It is hereby ordered that the judgment insofar as appealed from be and the same hereby is unanimously reversed on the law without costs and the objections dated October 22, 2003 are dismissed.

Memorandum: Petitioner (trustee) appeals and objectants cross-appeal from a judgment ordering that objectants "recover of" the trustee a surcharge plus interest and commissions in the amount of $24,076,937.31 based upon the Surrogate's determination that the trustee should have divested itself of a concentration of stock of Eastman Kodak Company (Kodak) on or before January 31, 1974. On June 1, 1951, Charles G. Dumont (decedent) executed his will and created a trust to provide income to his daughter, Blanche D. Hunter, during her lifetime, but also giving the trustee discretion to distribute income to Blanche's descendants. After Blanche's death, which occurred in 1972, the income was to go to Blanche's daughter, Margaret Hunter. Upon Margaret's death, the trust was to cease and the principal was to be paid over to Margaret's issue. In the event that Margaret died without issue, the principal would be distributed equally among three remainder beneficiaries. The trust was funded with a concentration of Kodak stock. Dece-

dent's will provided that "[i]t is my desire and hope that said stock will be held by my said Executors and by my said Trustee to be distributed to the ultimate beneficiaries under this Will, and neither my Executors nor my said Trustee shall dispose of such stock for the purpose of diversification of investment and neither they [n]or it shall be held liable for any diminution in the value of such stock." Decedent's will further provided that "[t]he foregoing . . . shall not prevent my said Executors or my said Trustee from disposing of all or part of the stock of [Kodak] in case there shall be some compelling reason other than diversification of investment for doing so."

In 1998 Margaret and one of her daughters, who subsequently died in 2002, sought an accounting of the trust for the period between December 1972 and August 1998. After the trustee filed the second intermediate account, Margaret and her daughter objected on the grounds, inter alia, that the trustee failed to invest the assets of the trust in a prudent manner, failed to exercise reasonable diligence and care, and failed to afford adequate consideration to the interests of the income beneficiaries of the trust. Following the issuance of an order directing the filing of a supplemental account, the trustee filed a superseding account, and objectants, i.e., Margaret and the remainder beneficiaries, filed objections and sought, inter alia, a refund of legal fees and commissions paid to the trustee. According to objectants, there were two compelling reasons other than diversification to sell 95% of the stock at the end of January 1973. According to the trustee, no compelling reason other than diversification existed until December 2001, at which time it began to sell the stock over a period of nine months.

The theory of objectants at trial was that the concentration of Kodak stock, combined with its "minuscule" income yield, constituted the requisite "compelling reason" to sell the Kodak stock on January 31, 1973. The theory of the trustee was that the only "compelling reasons" to sell the stock at that time were if Margaret needed additional income or if Kodak was headed for significant financial problems. According to the trustee, there was no "compelling reason" to sell the stock until the period between the late 1990's and 2001, when Kodak's "fundamentals" changed from film to digital technology.

Following the trial, the Surrogate determined that a "compelling reason" was "any factor which should indicate to the fiduciary that the interest of any beneficiary is not being reasonably maintained or protected by the trust, or that the interest of any beneficiary would not continue to be reasonably maintained or protected by the trust, if the trustee were to continue to retain

the stock." The Surrogate further determined that the trustee had breached its fiduciary duties with respect to the trust by, inter alia, failing to explore the meaning and the intent of the language in decedent's will, and by instead adopting a default meaning for the trust that was the least work-intensive and yet the most profitable, failing to "perform the frequent content-relevant communications" with the beneficiaries to insure that the trust was fulfilling its purpose, and adopting a definition of compelling reason that addressed only the needs of the life income beneficiary. The Surrogate further concluded, however, that those breaches of fiduciary duty could not result in liability without a concomitant determination that a compelling reason other than diversification existed for the sale of the stock. Nevertheless, the Surrogate concluded that, by January 31, 1974, a compelling reason to sell the stock existed because of the stock's "actual, substantial loss, and lack of viable hope of long term gain." He further concluded that a compelling reason to sell existed by January 31, 1974 because of the low income yield of Kodak stock. The Surrogate then calculated damages commencing from January 31, 1974, with a hypothetical sale of 95% of the stock, the subtraction of capital gains taxes, the addition of statutory interest compounded, and the subtraction of dividends received and sales proceeds.

We conclude that the Surrogate properly rejected the contention of objectants that a compelling reason to sell the stock existed as of January 31, 1973, based on low income yield combined with the risk to remainder beneficiaries caused by the concentration itself (*Matter of Dumont*, 4 Misc 3d 1003[A], 2004 NY Slip Op 50647[U], *19-23).

Once the Surrogate determined that objectants had failed to establish that there was a compelling reason other than diversification to sell the stock on January 31, 1973, however, we conclude that it was error for the Surrogate to look beyond the objections to determine that compelling reasons to sell the stock existed on January 31, 1974, i.e., "the actual, substantial loss and lack of viable hope of long term gain" in conjunction with a low income yield of the stock, and in calculating damages based on that determination.

It is well established that a Surrogate may select a date within the entire period during which an investment was held when divestiture of an imprudently held investment should have occurred (*see Matter of Janes*, 90 NY2d 41, 54 [1997], *rearg denied* 90 NY2d 885 [1997]), and may refuse to approve attorney fees even in the absence of an objection to those fees (*see Matter of Stortecky v Mazzone*, 85 NY2d 518, 525-526 [1995]). Neverthe-

less, "[t]he petition for an accounting and the objections thereto are pleadings similar to a complaint and an answer and they define the issues and limit the relief . . . . A surcharge may not be predicated on a ground neither alleged nor proved" (*Matter of Doelger*, 254 App Div 178, 182, *affd* 279 NY 646 [1938]; *see Schulman v Neubardt*, 87 AD2d 587, 588 [1982]; *Matter of Spade*, 28 AD2d 552 [1967]). Here, in evaluating whether the trustee violated the prudent person rule of EPTL 11-2.2 (a) (1),* the Surrogate sua sponte determined that the trustee acted imprudently on an unpleaded date based on a composite, unpleaded theory of imprudence. Objectants neither alleged nor offered proof that a compelling reason for the sale of the Kodak stock other than diversification existed on January 31, 1974. On that basis alone the judgment insofar as appealed from must be reversed and the objections to the superseding account dismissed.

In any event, even assuming, arguendo, that the Surrogate properly considered whether there was a compelling reason to sell the stock on a different date and on a different theory from that alleged or established by objectants, we conclude that there was no evidence that the trustee acted imprudently in failing to sell 95% of the stock by January 31, 1974, based on price reductions of the stock. "[I]t is not sufficient that hindsight might suggest that another course would have been more beneficial; nor does a mere error of investment judgment mandate a surcharge. Our courts do not demand investment infallibility, nor hold a trustee to prescience in investment decisions" (*Matter of Bank of N.Y.*, 35 NY2d 512, 519 [1974]). As the First Department wrote in *Matter of Cowles* (22 AD2d 365, 377 [1965], *affd* 17 NY2d 567 [1966]), "[t]he trustee had a right to have confidence in the long-range prospects of a business which had once prospered . . . . The trustee could not be expected to look into the future and to foresee that the stock would continually decline in value without making a comeback . . . . 'A wisdom developed after an event, and having it and its consequence as a source, is a standard [by which no person] should be judged . . . .' "

In our view, the Surrogate's determination that the trustee should have sold the stock on January 31, 1974 is impermissibly based on nothing more than hindsight (*see Matter of Janes*, 223 AD2d 20, 26-27 [1996], *affd* 90 NY2d 41 [1997], *rearg denied* 90

---

* From the beginning of the accounting period, December 30, 1972, until December 31, 1994, the trustee's actions are governed by the prudent person rule. The enactment of the Prudent Investor Act (EPTL 11-2.3) effective on January 1, 1995, does not impact this decision.

NY2d 885 [1997]; *Bank of N.Y.*, 35 NY2d at 519; *Cowles*, 22 AD2d at 377-378). Indeed, the evidence establishes that the trustee would have acted imprudently had it sold the stock on January 31, 1974. The stock had outperformed the Standard and Poor's 500 index by nearly 3 to 1 up to January 1973. Although the value of the stock fell from $148 on January 12, 1973 to $115 on January 11, 1974, it was still above its January 14, 1972 price of $97. In fact, the Valueline reports on Kodak stock indicated a Beta of .71 to 1.02 between January 14, 1972 and January 11, 1974 with a safety rating of one and 12-month performance ratings of two and three. Thus, the fluctuation in stock price could not constitute a compelling reason for the trustee to sell the stock on January 31, 1974, particularly in light of the expansive retention clause.

The Surrogate also determined that "[c]ompared with the 1973 reports, which show an almost boundless enthusiasm for . . . Kodak, the January 1974 report is so subdued that the absence of copious praise for . . . Kodak suggests a major change in the field's perception of the company." The trustee cannot be deemed to have acted imprudently in failing to sell the stock on January 31, 1974 because a more recent Valueline report included less praise than an earlier report. In fact, the record establishes that the January 1974 report stated, "we think these top quality shares will keep pace with the market averages in the year ahead."

Furthermore, the low income yield of the stock did not constitute a compelling reason to sell it, under the circumstances of this case. The dispositive test is whether the income was reasonable in view of "the needs and interests" of the income beneficiary, Margaret, in 1973, not whether a certain percentage yield was being met (*Janes*, 90 NY2d at 53; *see also* EPTL 11-2.2 [a] [1]). The income yield of a stock is not determinative, nor indeed is it relevant to, the determination of reasonable income. Rather, the determinative factor is the amount of income paid to the income beneficiary viewed in light of her overall financial circumstances (*see Janes*, 90 NY2d at 53-54). Here, however, objectants' expert testified that he had no understanding of what Margaret's income was from 1958 to the present, and he further testified that Margaret's income would be of no interest to him in deciding how to manage the trust. The record establishes that in 1973 Margaret received an inheritance valued at $12 million. Her estimated annual income in 1973 was over $150,000. The trust income for 1974 was $76,481.13. Based on the foregoing, we conclude that there is no basis upon which to determine that the income produced by the

trust during those years was not reasonable. Moreover, even if percentage yield were an appropriate measure, we would nevertheless conclude that consideration of that factor does not support the Surrogate's determination. In January 1973 the stock's yield was 1%, and the Surrogate concluded that such yield did not constitute a compelling reason to sell the stock. In January 1974, however, the yield had increased to 1.7%. Finally, we note that objectants' expert testified that the average percentage yield for a growth stock was between 1% and 1.5% in 1973, and the Kodak stock was within that range.

We therefore reverse the judgment insofar as appealed from and dismiss the objections to the superseding account (*see generally Matter of Hahn*, 93 AD2d 583 [1983], *affd* 62 NY2d 821 [1984]). In light of our determination, we do not address the issues concerning the calculation of damages, compound interest, and commissions. Present—Hurlbutt, J.P., Scudder, Kehoe, Martoche and Hayes, JJ. [*See* 4 Misc 3d 1003(A), 2004 NY Slip Op 50647(U) (2004).]